# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 29, 2015 Session

## MEMPHIS BONDING COMPANY, INC. v. CRIMINAL COURT OF TENNESSEE 30ᵀᴴ DISTRICT, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-15-0226-2     Jim Kyle, Chancellor**

---

**No. W2015-00562-COA-R10-CV – Filed November 25, 2015**

---

This appeal involves a challenge to a local rule of the criminal court in Shelby County. The lawsuit was filed in the chancery court.  After a hearing, the chancery court concluded that it had subject matter jurisdiction over the matter and entered a temporary injunction prohibiting the criminal court and its ten judges from enforcing a section of the local rule.  We granted an application for an extraordinary appeal filed by the criminal court and its judges.  We reverse the chancery court's exercise of subject matter jurisdiction, vacate the temporary injunction and remand for dismissal of the complaint.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Chancery Court Reversed, Vacated, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andree S. Blumstein, Solicitor General, Michael A. Meyer, Deputy Attorney General and Steven A. Hart, Special Counsel, for the appellants, Shelby County Criminal Court, Paula L. Skahan, Glenn Ivy Wright, J. Robert Carter, Jr., Carolyn W. Blackett, James M. Lammey, John Wheeler Campbell, Lee V. Coffee, Chris Craft, W. Mark Ward, and James C. Beasley, Jr.

Edward M. Bearman and Jeffrey A. Land, Memphis, Tennessee, for the appellee, Memphis Bonding Company, Inc.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Memphis Bonding Company, Inc. ("MBC") is a bail bond company doing

business in Shelby County, Tennessee. On February 23, 2015, MBC filed a sworn petition for injunctive relief and declaratory judgment in the chancery court of Shelby County, naming as defendants the Criminal Court of Tennessee for the Thirtieth Judicial District and each of its ten judges, who were named in their capacity as judges of the criminal court. According to the complaint, the criminal court and its judges ("Respondents") were in the process of amending the existing Rules of Practice and Procedure for the Criminal Court of Tennessee for the Thirtieth Judicial District in order to enact "Local Rules of Practice and Procedure for Bail Bond Companies," with an effective date of March 1, 2015.[1] MBC alleged that numerous sections of the proposed rules violated certain statutory and constitutional provisions and were also arbitrary, capricious, and without basis of right or legal authority. Accordingly, MBC asked the chancery court to declare the proposed Local Rules of Practice and Procedure for Bail Bond Companies "unenforceable, unconstitutional, and in violation of the law." MBC also asked the chancery court to issue a temporary restraining order, a temporary injunction, and eventually a permanent injunction enjoining the criminal court and its ten judges from enforcing the proposed amended rule, which was set to take effect on March 1, 2015. The complaint asserted that the chancery court had jurisdiction over the matter pursuant to Tennessee Code Annotated sections 16-11-101, 16-11-102, 16-11-115, 29-14-101 *et seq.* and Tennessee Rule of Civil Procedure 57.

The Office of the Attorney General and Reporter filed a response on behalf of the Respondents. In the response, the Respondents claimed that MBC was asking the chancery court to "hinder a sister court in the conduct of its business as it relates to the regulation of persons who write bail bonds in that court." They argued that "there is no legal basis for a litigant to obtain Chancery review of the actions of a circuit or criminal court or to use an equitable proceeding to hinder or disrupt those courts in the conduct of day to day business." They also claimed that it would be inappropriate for the chancery court to "review an action of a sister court that has exclusive jurisdiction over criminal matters[.]"

On or about March 3, 2015, the chancery court entered a temporary restraining order as requested in the complaint. The order recited the chancery court's conclusion that it "has jurisdiction in this matter."

The parties submitted briefs prior to the next hearing, regarding the request for a temporary injunction, and they continued to dispute the existence of subject matter jurisdiction. MBC argued that the chancery court had jurisdiction because it is empowered with "all the powers, privileges, and jurisdiction properly and rightfully

---

[1]The existing local rules addressed bail bond companies in Rule 7, which spanned just over one page. The proposed amendment would expand Rule 7 to eleven pages and designate it the Local Rules of Practice and Procedure for Bail Bond Companies.

incident to a court of equity" pursuant to Tennessee Code Annotated section 16-11-101. It also claimed that relief was appropriate pursuant to the Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101. In addition, MBC suggested that if a chancery court is empowered to review the constitutionality of a criminal *statute*, then by logical extension, it should have jurisdiction to "determine the constitutionality and lawfulness of administrative rules and regulations prescribed by a criminal court." MBC also claimed that it had no other adequate remedy in any other court. It insisted that it would be inappropriate for the judges of the criminal court to consider the validity of rules they promulgated themselves.

In response to these arguments, Respondents claimed that none of the statutes cited by MBC conferred subject matter jurisdiction on the chancery court to review decisions of the criminal court or otherwise interfere with the conduct of its business. The Respondents argued that even if a chancery court is permitted to consider the *validity* of a criminal statute, it is not permitted to *enjoin* its enforcement. By the same token, Respondents argued that a chancery court should not be permitted to enjoin a criminal court's practices and procedures concerning bondsmen. They suggested that "all issues related to bail and the conduct of bondsmen are properly left exclusively in the hands of the court having criminal jurisdiction." Respondents claimed that MBC had an adequate remedy aside from a chancery court proceeding because MBC could challenge the validity of the local rules in the event that it faced a criminal court action to suspend or revoke its authorization to write bail bonds.

After a hearing, the chancery court entered an order granting in part and denying in part the request for a temporary injunction. The chancery court dissolved its previous temporary restraining order. It again concluded that it had subject matter jurisdiction over the matter, concluding that "Tennessee law is clear that Chancery Courts, pursuant to a declaratory judgment action, can make a ruling on whether a criminal matter is constitutional." By extension, the chancery court reasoned that "this Chancery Court is authorized to rule upon the constitutionality of administrative rules and regulations, not criminal or penal in nature, even though the proposed enactment of the rules are by judges of a criminal court." The chancery court also concluded that MBC had "no other remedy." As a result, pending the final hearing, the chancery court temporarily enjoined the implementation of one particular subsection of proposed Rule 7, which would authorize random drug screening of bail bond company agents upon request of the criminal court. The chancery court concluded that such a requirement would be unconstitutional "on a state and federal constitutional basis." The chancery court denied the request for a temporary injunction with regard to the remainder of the proposed rule.

Respondents filed an application for an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. This Court granted the application to

consider whether the chancery court has jurisdiction to enjoin the criminal court from adopting, implementing, and enforcing local rules of the criminal court.

## II. STANDARD OF REVIEW

The issue on appeal involves the subject matter jurisdiction of the chancery court. Subject matter jurisdiction presents a question of law, which we review de novo without affording the trial court's decision a presumption of correctness.[2] *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012)). The concept of subject matter jurisdiction refers to a court's authority to adjudicate a particular case or controversy. *Id.* Accordingly, it is viewed as a threshold inquiry. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012).

The existence of subject matter jurisdiction "'depends on the nature of the cause of action and the relief sought.'" *In re Baby*, 447 S.W.3d at 837 (quoting *Chapman*, 380 S.W.3d at 712). A court has subject matter jurisdiction only when conferred by a statute or a provision of the state or federal constitution. *Id.* (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). When a court's subject matter jurisdiction is questioned, the first step is to ascertain the nature or gravamen of the case. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006) (citing *Newsome v. White*, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *2 (Tenn. Ct. App. Dec. 22, 2003)). Then, the court must determine whether the constitution, the general assembly, or the common law have conferred on it the power to adjudicate cases of that sort. *Id.* (citing *Newsome*, 2003 WL 22994288, at *2; *Levy v. Bd. of Zoning Appeals*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *3 (Tenn. Ct. App. Sept. 27, 2001)).

## III. DISCUSSION

On appeal, the Respondents contend that the chancery court lacks subject matter jurisdiction to review the validity or to enjoin the enforcement of local rules of a criminal court regarding bail bonds.

---

[2]We reject MBC's assertion that, at this stage of the proceedings, we must simply accept as true the allegation in its complaint that the chancery court possessed jurisdiction. *See Tate v. State*, No. W2002-00177-COA-R3CV, 2003 WL 21026939, at *2 n.3 (Tenn. Ct. App. Apr. 14, 2003) (explaining that an allegation of jurisdiction is "not a factual allegation that would be 'taken as true,' but rather a legal conclusion"); *see also Johnson v. Hopkins*, 432 S.W.3d 840, 843-44 (Tenn. 2013) ("Subject matter jurisdiction is conferred by statute or the Tennessee Constitution; the parties cannot confer it by appearance, plea, consent, silence, or waiver.")

The Tennessee Supreme Court has the power to prescribe rules governing the practice and procedure in all of the courts of this state. Tenn. Code Ann. § 16-3-402; *State v. Best*, 614 S.W.2d 791, 793 (Tenn. 1981). "Each of the other courts of this state may adopt additional or supplementary rules of practice and procedure not inconsistent with or in conflict with the rules prescribed by the supreme court." Tenn. Code Ann. § 16-3-407; *see also* Tenn. R. Sup. Ct. 18 (explaining that each judicial district may adopt "uniform rules not inconsistent with the statutory law, the Rules of the Supreme Court, the Rules of Appellate Procedure, the Rules of Civil Procedure, the Rules of Criminal Procedure, the Rules of Juvenile Procedure, and the Rules of Evidence.") In other words, local trial courts are empowered to enact and enforce local rules as long as those rules do not conflict with general law. *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 35 (Tenn. 2007). According to our supreme court, it is "clearly implicit" in the aforementioned statutes that "no court other than the Supreme Court can make rules governing the procedure in other courts." *Best*, 614 S.W.2d at 793.

Trial courts also have inherent power to administer their affairs, "including the right to impose reasonable regulations regarding the making of bonds." *Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976) (citing *Taylor v. Waddey*, 334 S.W.2d 733 (1960)). In *Taylor v. Waddey*, the Tennessee Supreme Court considered the inherent authority of a court to regulate the actions of bondsmen writing criminal bonds before the court. The court concluded that such regulation was permissible:

> So long as the court in the conduct of its business makes requirements of this kind and these requirements are reasonable ones, and reasonable regulations, they clearly come within the reasonable police power and inherent power of these courts. . . . So long as these regulations of the applicant are not capricious, arbitrary or solely without basis of right, then these acts may be properly supervised by the court in its ministerial capacity as here.

*Taylor*, 334 S.W.2d at 736. A trial court is given wide discretion in its regulation of bail bondsmen, and its actions will not be overturned absent a showing that they were arbitrary, capricious, or illegal. *In re A Way Out Bonding*, No. M2012-00423-CCA-R3-CO, 2013 WL 2325276, at *2 (Tenn. Crim. App. May 28, 2013); *In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998); *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995). The question remains as to precisely how a party can challenge a local rule governing bail bondsmen on the basis that it is arbitrary, capricious, illegal, or unconstitutional.

5

In several cases, courts have considered the validity of local rules that applied to the particular circumstances of existing litigation. *See, e.g.*, *Glisson v. Mohon Int'l, Inc./Campbell Ray*, 185 S.W.3d 348, 354-55 (Tenn. 2006) (holding a local rule invalid because it was contrary to a Tennessee Rule of Civil Procedure, in the context of a workers' compensation suit); *State v. Thomas*, 813 S.W.2d 395, 397 (Tenn. 1991) (finding a local rule unenforceable because it contravened a supreme court rule, in the context of a criminal case); *Smalling v. Smalling*, No. E2013-01393-COA-R10-CV, 2014 WL 285682, at *3 (Tenn. Ct. App. Jan. 24, 2014) (*no perm. app. filed*) (finding a local rule invalid to the extent it conflicted with an applicable statute, in the context of a divorce action); *Kenyon v. Handal*, 122 S.W.3d 743, 752 (Tenn. Ct. App. 2003) (holding a deadline in a local rule unenforceable to the extent it conflicted with a deadline in the Tennessee Rules of Civil Procedure, in the context of a medical malpractice case); *Brown v. Daly*, 884 S.W.2d 121, 123-24 (Tenn. Ct. App. 1994) (finding a local rule null and void as conflicting with the Rules of Civil Procedure, in a suit for partition of real property).

We also conclude that a declaratory judgment action may be an appropriate method of challenging a local rule. *See, e.g.*, *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 11 (1st Cir. 2000) ("the proper method for mounting a facial challenge to the validity of [a local rule] . . . is through an action for declaratory and/or injunctive relief filed in the district court"); *Maynard v. U.S. Dist. Court for Cent. Dist. of California*, 915 F.2d 1581 (Table) (9th Cir. 1990) (involving an action for a declaratory judgment that a local rule was unconstitutional); *Knod v. Dir., TDCJ-CID*, No. 6:11CV140, 2011 WL 6016470, at *1 (E.D. Tex. Dec. 1, 2011) (same); *Perry v. Aversman*, 168 S.W.3d 541, 544 (Mo. Ct. App. 2005) (involving a declaratory judgment action to have a local rule governing bail bonds declared invalid).[3]

However, we conclude that the *chancery* court does not have subject matter jurisdiction to entertain an action for declaratory or injunctive relief regarding the validity of local rules of the *criminal* court. In *Barger v. Brock*, 535 S.W.2d 337 (Tenn. 1976), the Tennessee Supreme Court held that a chancery court could not declare a Rule of the Supreme Court unconstitutional or enjoin its enforcement. The court explained:

> We hold that the inferior courts of the state may not entertain any

---

[3]This Court has considered the validity of a local rule of a general sessions court in the context of an appeal from a circuit court suit for mandamus, certiorari, and declaratory judgment; however, we considered the validity of the local rule without specifying which portion of the underlying petition served as the basis for granting relief. *Harvey v. LaDuke*, No. E2005-00533-COA-R3-CV, 2006 WL 694640, at *2 (Tenn. Ct. App. Mar. 20, 2006).

suit or action challenging the validity of any Rule of this Court. Such a suit would be in the nature of a bill of review or to impeach a judgment of this Court, and, in effect, would constitute an appeal to the chancery court from the action of this Court. Such a proceeding is unknown to the law.

*Id.* at 342. Permitting the chancery court to review the local rules of another trial court is also problematic. In a case involving the interplay between chancery and circuit courts, the supreme court stated:

Patently the Chancery Court has no power to sit as a court of review to correct judgments of the Circuit Court which are merely erroneous. Nor does it have the power to interfere with the Circuit Court itself in the performance of its duties and functions.

*Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955). We believe the same reasoning applies to the situation before us. To allow the chancery court to review the validity or enjoin the enforcement of the local rules of the criminal court would interfere with the inherent power of the criminal court to administer its affairs and impose reasonable regulations regarding the making of bonds. Just as it is "implicit" in the statutory scheme regarding local rules that "no court other than the Supreme Court can make rules governing the procedure in other courts," *Best*, 614 S.W.2d at 793, we conclude that the applicable statutes and rules do not authorize chancery court review of the local rules of the criminal court.

MBC relies on Tennessee Code Annotated section 16-11-101 as a basis for chancery court jurisdiction, as it provides that "[t]he chancery court has all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity." Tenn. Code Ann. § 16-11-101. We recognize that the power to grant injunctive relief is a power that courts of equity (or chancery courts) have possessed for centuries. *Watts v. Burkhart*, 854 F.2d 839, 851 (6th Cir. 1988). However, that power is not unlimited.

For example, in *Clinton Books, Inc. v. City of Memphis*, 197 S.W.3d 749 (Tenn. 2006), the Tennessee Supreme Court considered whether a chancery court had subject matter jurisdiction to issue a temporary injunction barring enforcement of a criminal statute. The court explained:

The long-standing rule in Tennessee is that state courts of equity lack

7

jurisdiction to enjoin the enforcement of a criminal statute that is alleged to be unconstitutional. *See, e.g.*, *Alexander v. Elkins*, 132 Tenn. 663, 179 S.W. 310, 311 (1915); *J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 123 S.W. 622, 637 (1909). A lawsuit seeking injunctive relief due to an allegedly invalid criminal statute asks the chancery court, rather than the court that will enforce the criminal law, to enjoin the officers of the state from prosecuting persons who are conducting a business made unlawful by a criminal statute until the chancery court can determine the statute's validity. *J.W. Kelly & Co.*, 123 S.W. at 631. Permitting a court of equity to interfere with the administration of this state's criminal laws, which that court is without jurisdiction to enforce, would cause confusion in the preservation of peace and order and the enforcement of the State's general police power. *Id.* at 637.[4]

*Id.* at 752. Although the case before us involves a local rule of a criminal court rather than a criminal statute, the concerns are equally relevant. Permitting a chancery court to enjoin and otherwise interfere with the administration of the criminal court would cause confusion and disrupt the orderly administration of the judicial system. In effect, the chancery court would be invading the jurisdiction of the criminal court.

We are not persuaded by MBC's argument that, regardless of its power to enter injunctive relief, the Declaratory Judgment Act provides an independent source of subject matter jurisdiction for the chancery court to review the local rules of the criminal court regarding bonds. Chancery courts have subject matter jurisdiction to adjudicate declaratory judgment actions. *Estate of Brown*, 402 S.W.3d 193, 199 (Tenn. 2013). The Declaratory Judgment Act "conveys the power to construe or determine the validity of any written instrument, statute, ordinance, contract, or franchise, *provided that* the case is within the court's jurisdiction." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 837 (Tenn. 2008) (citing Tenn. Code Ann. § 29-14-103) (emphasis added). However, "[t]he Declaratory Judgment Act does not grant the power to courts to declare and enforce rights outside their scope of jurisdiction." *Morgan v. Norris*, No. 88-70-II, 1988 WL 133479, at *2 (Tenn. Ct. App. Dec. 16, 1988) (citing *Zirkle v. City of Kingston*, 217 Tenn. 210, 396 S.W.2d 356 (1976); *Hill v. Beeler*, 199 Tenn. 325, 286 S.W.2d 868 (1956); *Nicholson v. Cummings*, 188 Tenn. 201, 217 S.W.2d 942 (1949)); *see also* Tenn. Code Ann. § 29-14-102(a) ("Courts of record *within their respective jurisdictions* have

---

[4]The supreme court noted that a chancery court *may* enjoin the enforcement of a criminal statute that *the supreme court* has adjudged unconstitutional. *Clinton Books*, 197 S.W.3d at 753. In that situation, the court explained, "no controversies are required to be settled by a criminal court, and the equity court is not invading the criminal court's jurisdiction by issuing an injunction." *Id.*

8

the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.") (emphasis added).

As noted in 26 C.J.S. *Declaratory Judgments* § 124:

The declaratory-judgment statutes give to courts of record the power to declare rights, status and other legal relations within their respective jurisdictions, but do not confer subject matter jurisdiction. A declaratory judgment act is not an express independent source of subject matter jurisdiction, and ordinarily does not by itself grant or otherwise create jurisdiction. In order that a court have jurisdiction to render a declaratory judgment over any subject matter, jurisdiction must exist independent of the declaratory judgment statute. . . .

A litigant's request for declaratory relief does not alter a suit's underlying nature. Declaratory judgment actions are subject to the same limitations inherent in the underlying cause of action from which the controversy arose. Statutory authority to award a declaratory judgment does not permit litigants to raise such claims, by their own "bootstraps," if jurisdiction is otherwise lacking.

Statutes authorizing declaratory judgments merely extend the power of the courts to grant relief in cases that are already within their jurisdiction. Such statutes, therefore, do not confer any additional jurisdiction on the courts, or modify its jurisdictional reach over the parties or the subject matter.

For example, "[t]he Federal Declaratory Judgment Act does not confer independent jurisdiction but merely provides additional remedies where jurisdiction already exists. The plaintiff must establish an independent source of subject matter jurisdiction in order to proceed to pursue declaratory relief in a federal court." 22A Am. Jur. 2d *Declaratory Judgments* § 188.

Likewise, in Tennessee, "the Declaratory Judgment Act has not given the courts jurisdiction over any controversy that would not be within their jurisdiction if affirmative relief were being sought." *Hill v. Beeler*, 286 S.W.2d 868, 871 (Tenn. 1956). Simply put, "the Declaratory Judgment Act does not confer an independent basis for jurisdiction." *Batts v. Lack*, No. 86-147-II, 1986 WL 13040, at *3 (Tenn. Ct. App. Nov. 21, 1986) (citing *Hill*, 286 S.W.2d at 871). Consequently, the Tennessee Supreme Court has held that "[a] declaratory judgment is proper in chancery, but only if chancery originally could have entertained a suit of the same subject matter." *Zirkle v. City of*

9

*Kingston*, 396 S.W.2d 356, 363 (Tenn. 1965) (citing *Gibson, Suits in Chancery* § 36, n.62 (5th ed. 1955)).  In *Zirkle*, for instance, the supreme court concluded that the chancery court did not have jurisdiction over any of the theories alleged in the complainants' suit, and therefore, it could not "take jurisdiction to enter a declaratory judgment."  *Id.*

We recognize that the Middle Section of this Court declined to follow the Tennessee Supreme Court's decision in *Zirkle* in *Blackwell v. Haslam*, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at *5 (Tenn. Ct. App. Jan. 11, 2012), *perm. app. denied* (Tenn. Apr. 11, 2012).  The *Blackwell* court concluded that a chancery court had subject matter jurisdiction over a complaint for declaratory relief regarding the constitutionality of a statute imposing criminal penalties even though the chancery court lacked jurisdiction to enjoin the enforcement of the same statute.  *Id.* at *6.  The Middle Section acknowledged that the supreme court had not explicitly overruled *Zirkle*, but, nevertheless, it concluded that the supreme court had "clearly departed from the unequivocal declaration" in *Zirkle* in two subsequent cases: *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520 (Tenn. 1993) and *Clinton Books*, 197 S.W.3d at 749.  The Middle Section emphasized that those two cases involved requests for declaratory relief regarding statutes that assessed criminal penalties, "and in none of these cases did the court find that the chancery court lacked subject matter jurisdiction."  *Id.* at *5.  However, neither *Davis-Kidd* nor *Clinton Books* contains any discussion regarding the chancery court's subject matter jurisdiction over a request for declaratory relief.  In *Clinton Books*, the jurisdictional issue presented was whether the chancery court had subject matter jurisdiction to enter *injunctive* relief regarding a criminal statute.  The supreme court concluded that it did not.  *Clinton Books*, 197 S.W.3d at 755.  The court remanded the request for *declaratory* relief due to a procedural issue but did not discuss the issue of subject matter jurisdiction as it pertained to declaratory relief.

When the *Clinton Books* court considered the issue of subject matter jurisdiction to enter an injunction, the court acknowledged that in *Davis-Kidd* and another case, plaintiffs sought injunctive and declaratory relief regarding the constitutionality of criminal statutes, and the supreme court addressed the constitutional issues without addressing the chancery court's jurisdiction.  *Id.* at 752-53.  However, the supreme court explained that "stare decisis only applies with reference to decisions directly upon the point in controversy" and cautioned that "the omission of any discussion of the trial court's jurisdiction in [] *Davis-Kidd* should not be interpreted as altering the general rule prohibiting state equity courts from enjoining enforcement of a criminal statute."  *Id.* at 753.  In other words, we should not assume that subject matter jurisdiction existed based on the fact that the issue was not addressed.  This seems to be the same approach the court of appeals used in *Blackwell*.  We respectfully disagree with its conclusion that the supreme court "clearly departed from the unequivocal declaration" in *Zirkle* by its silence

in *Davis-Kidd* and *Clinton Books*. We consider the supreme court's unequivocal statements in *Zirkle* and *Hill v. Beeler*, 199 Tenn. 325, 333, 286 S.W.2d 868, 871 (1956) to be controlling. Because MBC's underlying claim for injunctive relief regarding the local rules could not be brought in chancery court, the chancery court could not exercise subject matter jurisdiction over the declaratory judgment aspect of the case either.

"The criminal courts in Shelby County determine who qualify to be bail bondsmen." *In re Hitt*, 910 S.W.2d at 902 (citing Tenn. Code Ann. § 40-11-124). Any challenge to the criminal court's local rules governing bail bondsmen should be considered in the criminal courts of Shelby County. *See, e.g.*, *Barger*, 535 S.W.2d at 342 (inviting parties who deemed the Supreme Court Rule objectionable to petition the supreme court for its elimination or modification). We render no opinion regarding the validity of the criminal court's local rules, as the question before us relates only to subject matter jurisdiction, not to the merits of MBC's claims.

We note that MBC raises several arguments on appeal regarding whether the criminal court judges should be disqualified from considering the validity of the local rules they enacted. However, in our view, these arguments would be more appropriately considered in the context of a motion for recusal filed in any proceeding ultimately instituted in criminal court.

## V. CONCLUSION

For the aforementioned reasons, the chancery court's exercise of subject matter jurisdiction is reversed, the temporary injunction is vacated, and this case is remanded for dismissal of the complaint. Costs of this appeal are taxed to the appellee, Memphis Bonding Company, Inc., for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

11