IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2018 Session

## IN RE: CUMBERLAND BAIL BONDING, et al.

**Appeal from the Circuit Court for Franklin County**
**No. 14648-CV      Thomas W. Graham, Judge**

_____

**No. M2017-01171-CCA-R3-CD**

_____

A bondsman for Appellant Cumberland Bail Bonding ("Cumberland") was arrested after law enforcement determined that he was trading bonds for sex. A panel of circuit court judges entered a *sua sponte* order suspending Cumberland's authority as a bonding company in Marion County and a subsequent order suspending the authority of A Bail Bonding Company ("A Bail Bonding") and A+ Bail Bonding, whose proprietor was also the owner of Cumberland. After a hearing, the trial court determined that the bondsman engaged in professional misconduct, that Cumberland did not explicitly prohibit the misconduct in its employee manual, and that Cumberland failed to notify the court of the bondsman's arrest. The bonding privileges of all three Appellants were suspended for a period of six months. The Appellants challenge the suspension, asserting that they were denied their due process rights and that the trial court erred in suspending their bail bonding authority. The State responds that the appeal is moot but that there was in any event no error. We have addressed the underlying issues and have determined that the trial court's actions were in error. Accordingly, the judgment of the trial court is vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Stephen T. Greer and Russell Anne Swafford, Dunlap, Tennessee, for the appellants, Cumberland Bail Bonding, A Bail Bonding Company, and A+ Bail Bonding.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; J. Michael Taylor, District Attorney General; and Sherry Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

According to proof introduced at the hearing on the matter, Mr. Kelvin Pell, a bondsman for Cumberland, was arrested on February 8, 2017, after law enforcement conducted a "sting" to establish that he had been trading bonds for sexual contact. The matter became public via an article in the local newspaper on February 10, 2017. On Monday, February 13, 2017, Cumberland mailed a petition to cancel Mr. Pell's authority as an agent. The petition made no mention of Mr. Pell's misconduct or arrest, and it was received and approved by the court the following day. On February 17, 2017, a panel of judges in the Twelfth Judicial District entered a *sua sponte* order suspending the authority of Cumberland to write bonds and asking the district attorney to investigate Mr. Pell's allegation that trading bonds for sexual contact was a "common occurrence" in the district. The order noted that Mr. Pell had engaged in misconduct and that Cumberland had failed to notify the court of his arrest in violation of the local rules. Attached to the order was the sworn affidavit of Investigator Chad Johnson of the Marion County Sheriff's Department, alleging that Mr. Pell had bonded a woman out of jail, had committed sexual battery on her, and had agreed to exchange sex for her bond payment. Mr. Pell confessed to having traded sex for bonds on multiple occasions and had asserted it was "a common occurrence in the bonding industry."

On February 22, 2017, Cumberland moved to set aside the order of suspension and moved for a hearing, noting that it had acted immediately to suspend the offending agent, allowing for an intervening weekend. Although the order is not part of the record, the trial court subsequently suspended A Bail Bonding and A+ Bail Bonding. At the hearing on the matter, the trial court noted that according to court records, all three companies were wholly owned by Mr. Thomas Andrew Baggenstoss, and in order to prevent "a back door approach," A Bail Bonding and A+ Bail Bonding were suspended on February 27, 2017. On March 6, 2017, the appellants again moved to set aside the orders and asked for the hearing scheduled for March 17, 2017, to be held earlier.

On March 17, 2017, the trial court held a hearing on the suspension. The trial court initially noted that the actions of Mr. Pell were shocking to the conscience of the court and that at the end of the hearing, the court would determine when the companies might be reinstated. The State offered proof of Mr. Pell's misconduct through law enforcement officers involved in the investigation.

Investigator Johnson testified that he had become aware in 2015 that the Jasper Police Department was investigating Mr. Pell based on allegations that he was issuing

bonds in exchange for sexual contact. Because the victim in the Jasper case did not wish to prosecute, no action was taken.

Mr. Pell again came to the attention of Investigator Johnson on February 8, 2017, as Investigator Johnson was conducting a narcotics investigation. A confidential informant agreed to cooperate with a "sting operation" intended to reveal whether Mr. Pell was indeed trading sexual contact for bonds. During the sting, the informant, who was wearing a recording device, called Mr. Pell from the jail to make it appear that she was in custody and informed him that she had no money but would like to be released on bond. Mr. Pell arranged for the informant's "release" on bond, took her to Cumberland's office, and was recorded making an oral agreement to exchange sex for her bond and making statements suggesting that he was committing sexual battery. He was taken into custody partially clothed in a hotel room which had been rented by the Marion County Sheriff's Department, and he was charged with sexual battery and patronizing prostitution.

Investigator Matt Blansett of the Marion County Sheriff's Department interviewed Mr. Pell, who acknowledged that he was planning to trade sexual intercourse for a bond. He likewise acknowledged having previously traded sexual contact for a bond in Jasper in 2015, where the victim had been "scared and shaking." Mr. Pell denied having traded bonds for sex in the past six months but appeared to think he had done nothing wrong and asserted that it was a "common occurrence in the bonding industry." Mr. Pell told Investigator Blansett that he had previously been employed as a police officer in Hamilton County.

Investigator Johnson agreed that he never notified Mr. Baggenstoss, the owner of Cumberland, regarding the 2015 allegations in Jasper or the arrest of Mr. Pell on February 8, 2017. Investigator Blansett likewise did not inform Mr. Baggenstoss of Mr. Pell's misconduct, and he did not inform the district attorney. Both Investigator Johnson and Investigator Blansett testified that Mr. Pell hid his misconduct from Cumberland by paying Cumberland cash from his own funds for the bail bonds which he had exchanged for sexual contact.

Mr. Baggenstoss, the owner of Cumberland, A Bail Bonding, and A+ Bail Bonding, testified that he performed a background check on Mr. Pell, who had previously worked as a police officer in Hamilton County. Mr. Pell had no criminal record. Mr. Baggenstoss introduced the Tennessee Bureau of Investigation report showing that Mr. Pell had no criminal record, Mr. Pell's affidavit that he was not disqualified by prior convictions or profession to act as a bondsman, and Mr. Pell's letters of recommendation from former coworkers in law enforcement. Mr. Baggenstoss testified that Mr. Pell completed the required continuing education while he worked with

Cumberland. Mr. Baggenstoss acknowledged that his company policies did not explicitly forbid Mr. Pell from engaging in sexual contact with clients and testified that the restriction was absent because it had never crossed his mind, being "so absurd." On redirect examination, he recalled that his attorney had conducted a continuing education seminar for his agents and that during the seminar, the attorney had told them not to trade sex for bonds.

Mr. Pell was "an independent contractor" for Cumberland beginning in 2012. Mr. Baggenstoss introduced tax forms showing that Mr. Pell received "Nonemployee compensation." The company also introduced the "Petition for Approval of Agent" submitted by Cumberland to the court, asking the court "to approve KELVIN PELL as an agent of the bonding company" and requesting the trial court's approval of Mr. Pell as an agent "subject to the continuing compliance by the bonding company and the agent with the Local Rules of the Court and the applicable statutes." Mr. Baggenstoss also submitted documentation showing that the three companies in question were separate corporations as recognized by the Tennessee Secretary of State. Mr. Baggenstoss admitted that Cumberland was bound by the actions of its agent, Mr. Pell.

Mr. Baggenstoss had no knowledge of any of Mr. Pell's prior misconduct. He was informed about Mr. Pell's arrest through a telephone call from a reporter on the afternoon of February 9, 2017. The next day, Mr. Baggenstoss called the county clerk's office and was told that to revoke Mr. Pell's authority as an agent of Cumberland, Mr. Baggenstoss must file a formal written petition with the court and send a filing fee. The paperwork was completed on Friday and was mailed the following Monday, February 13, 2017. Mr. Baggenstoss reiterated that he had no prior knowledge of Mr. Pell's behavior and stated that he was angered by the false statement that trading sexual contact for bonds was common practice. The State stipulated that numerous employees of Mr. Baggenstoss who were present at the hearing would testify that they were not aware of any misconduct among employees and that trading sex for bonds was not a common practice.

Mr. Baggenstoss acknowledged that he had not informed the court of Mr. Pell's arrest, stating that he thought notice of Mr. Pell's termination from Cumberland was sufficient and that he was unaware of that particular requirement. He testified that he did not receive any money for the bond of the confidential informant but later acknowledged that she was not actually under arrest and there was accordingly no actual bond written.

The trial court entered a written order on March 20, 2017, suspending all three of Mr. Baggenstoss's companies for a period ending six months from the initial date of suspension. In its order, the trial court found that Mr. Pell, an agent of Cumberland, had

been arrested for the felony and misdemeanor offenses of sexual battery and patronizing prostitution. The trial court found that there was "no doubt" that Mr. Pell was guilty of professional misconduct for accepting "anything of value from a principal except the premium." T.C.A. § 40-11-126(8). The trial court elaborated that preying upon those who were imprisoned, as Mr. Pell had done, "is unconscionable and truly shocks the conscience of the Court." The court acknowledged that it had been presented with no proof that Mr. Baggenstoss was aware of Mr. Pell's unethical conduct, but it concluded that by failing to include clear written rules prohibiting sexual contact with clients "the bonding company invites the problems discovered in this case." The court further noted that Cumberland had failed to comply with the local rule requiring it to notify the court of Mr. Pell's arrest. In order to deter any future misconduct, the trial court revoked the bonding privileges of all three companies for a six-month period and ordered Mr. Baggenstoss to adopt rules prohibiting sexual contact with clients.

On April 17, 2017, the Appellants filed a motion entitled "Motion to Alter or Amend and/or Motion for a New Trial." While objecting to the trial court's requirement regarding the employee manual, Cumberland appended a copy of a revised, conforming manual and asked to be reinstated. The other Appellants objected to the suspension on the ground that, as separate legal entities, there was no basis to suspend their privileges. The trial court denied the motion on May 12, 2017, and the Appellants on June 7, 2017, entered a motion to stay the judgment and a notice of appeal. The record does not reflect any disposition of the motion for a stay. *See* Tenn. R. Civ. P. 62.04, 62.05.

## ANALYSIS

Attempting to dissociate themselves from the actions of Mr. Pell, the Appellants argue that the trial court erred in suspending the companies owned by Mr. Baggenstoss. They assert that the trial court's actions denied them their due process rights by suspending them without holding a hearing. The State argues that this court should dismiss the appeal because it is moot and that the trial court properly suspended the bonding privileges of the Appellants.

### I. Mootness

The State argues that because the suspension of the Appellants was to end on August 15, 2017, there is no longer a live controversy between the parties, noting that the record contains no ruling on the motion for a stay which the Appellants filed in the trial court.[1] *See* Tenn. R. Civ. P. 62.04 (noting that a bond "may be given at or after the

---

[1] At oral argument, the State noted that, due to the filing of the Appellant's "Motion to Alter or Amend and/or Motion for a New Trial," the notice of appeal was filed more than thirty days after the

time of filing the notice of appeal. The stay is effective when the bond is approved by the court"). The Appellants at oral argument stated that the stay was denied from the bench with no written order, but they asserted that the appeal is not moot because the situation is capable of repetition yet evading review.

Mootness is a doctrine regarding the justiciability of a controversy. *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). A case is justiciable when it involves "a genuine and existing controversy requiring the present adjudication of present rights." *Id.* "A moot case is one that has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief." *Id.* (citations omitted). When the case may no longer provide relief to the prevailing party, it is considered moot. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 204 (Tenn. 2009).

"In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case." *Id.* Mootness does not require the court to mechanically dismiss any case in which relief is no longer available. *Id.* A court may still address an issue:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

---

judgment, although not more than thirty days after the denial of the post-judgment motion. The State has chosen not to raise the issue because the timeliness of the motion depends on whether the Rules of Civil Procedure or Rules of Criminal Procedure apply. This court has previously applied the Rules of Civil Procedure to bail bond forfeiture actions. *Indem. Ins. Co. of N. Am. v. Blackwell*, 653 S.W.2d 262, 264-65 (Tenn. Ct. App. 1983); *In re Gary's Bonding Co.*, No. M2011-00430-CCA-R3-CD, 2011 WL 4529645, at *1-2 (Tenn. Crim. App. Sept. 30, 2011) (concluding that filing of the notice of appeal is jurisdictional in bond forfeitures because they are civil in nature). Moreover, we have applied the Rules of Civil Procedure to the suspension of a bonding company. *In re AAAA Bonding Co.*, No. M2014-02157-CCA-R3-CD, 2016 WL 2621087, at *5 & n.1 (Tenn. Crim. App. May 5, 2016) (noting that the Rules of Civil Procedure apply and that no motion under Tennessee Rule of Civil Procedure 52.02 had been filed). In any event, the appeal is either timely or the tardiness is nonjurisdictional. Tenn. R. App. P. 4(a), (b).

*Id.* (footnotes omitted). A controversy which is capable of repetition yet evading review is characterized by: (1) the challenged action being too brief to be litigated fully prior to its cessation; and (2) a reasonable expectation that the same complaining party would be subjected to the same action again. *State v. Montgomery*, 929 S.W.2d 409, 414 (Tenn. Crim. App. 1996).

In *State v. Drake*, the Tennessee Supreme Court considered whether a challenge regarding the appropriate rules and procedures to be applied to closure orders had become moot due to the expiration of the order. 701 S.W.2d 604, 608-09 (Tenn. 1985). The court noted that the matter was capable of repetition yet evading review, and it addressed the issue of proper procedure but declined to address any errors in the closure order itself. *Id.* at 609. In *State v. Montgomery*, the press sought to intervene when it was prohibited from publishing the name of a witness who had testified publicly during trial. 929 S.W.2d at 410-11. The State moved to dismiss the appeal for mootness because the trial had ended and the restraint, by its own terms, ended at the close of trial. *Id.* at 414. This court nevertheless addressed the propriety of the restraint because the issue was capable of repetition yet evading appellate review. *Id.*; *see State v. Freddie Morrow*, No. 02C01-9601-CC-00022, 1996 WL 170679, at *2 n.2 (Tenn. Crim. App. Apr. 12, 1996) (determining that, even though the trial had ended, an issue regarding exclusion of cameras from trial was capable of repetition yet evading review and noting that a request for media coverage required very short notice).

We conclude that the circumstances present here, like those in *Montgomery* and *Freddie Morrow*, are capable of repetition yet of such brief duration that they cannot be fully litigated prior to cessation. Accordingly, we decline to dismiss for mootness.

## II. Suspension

The Appellants challenge the trial court's decision to suspend their bonding privileges, asserting that the suspension did not comport with due process and that there was no basis to warrant suspension. In particular, they object to the fact that the suspension commenced prior to the hearing. The State responds that the Appellants were given notice and a hearing and that the trial court properly suspended them based on the misconduct of Mr. Pell.

### A. Due Process

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Tennessee Constitution prohibit the government from infringing upon property interests without notice and a hearing. *See State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn. 1980). Due process safeguards apply when the

aggrieved party has a constitutionally protected liberty or property interest. *In re A-River City Bail Bond, Inc.*, No. W2015-01578-CCA-R3-CD, 2016 WL 7190909, at \*7 (Tenn. Crim. App. Dec. 12, 2016). The deprivation of the right to engage in the business of bail bonding by judicial suspension implicates due process concerns. *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998) Accordingly, the Appellants were entitled to due process protections when they were suspended. *Id.* Due process, however, is flexible and based on the concepts of fairness and reasonableness, and we accordingly weigh the interests of the Appellants and the State to determine exactly "what process is due." *Id.* at 85-86.

The notice requirement of due process requires "'notice reasonably calculated under all the circumstances, to apprise interested parties' of the claims of the opposing parties." *In re A-River City Bail Bond, Inc.*, 2016 WL 7190909, at \*8 (quoting *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 688 (Tenn. 1996)). Notice may not be ambiguous or obscure and must clearly inform the party of the nature of the charges. *AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 86. By statute, a bondsman has the right to a copy of the charges which resulted in suspension. § 40-11-125(b). In this case, the Appellants were informed through court order that, based on the misconduct of Mr. Pell, based on his allegations regarding widespread unethical behavior among his colleagues, and based on the Appellants' failure to report the arrest as required by the local rules, the court was suspending the Appellants' bonding privileges pending a hearing.[2] This notice was adequate to inform the Appellants of the claims they were called on to defend. *See In re A-River City Bail Bond, Inc.*, 2016 WL 7190909, at \*8 (concluding that notice was adequate when the bonding company was actually aware of the reason for its suspension and was verbally informed of the reason prior to the hearing, even though the particular violation was not contained in the written notice); *compare In re Am. Bonding Co.*, No. M2013-00735-CCA-R3-CD, 2013 WL 6705994, at \*4-5 (Tenn. Crim. App. Dec. 19, 2013) (concluding that notice was inadequate when the trial court purported to be vacating a prior reinstatement but was in fact ordering a new suspension and when the trial court, choosing from a smorgasbord of misdeeds, did not clarify the basis of the suspension).

The second component of due process is an opportunity to be heard. *AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 86. In general, due process requires only an opportunity to present claim at a meaningful time and in a meaningful manner. *Whitehead v. State*, 402 S.W.3d 615, 623 (Tenn. 2013). "[P]rocedural due

---

[2] The Appellants' assertion that Mr. Baggenstoss was notified of the suspension by the press is a misreading of the record. Mr. Baggenstoss testified that he was notified of Mr. Pell's arrest by a reporter, but there was no evidence regarding notice of the suspension, beyond the fact that the order was filed with the clerk, who completed a certificate of service on Cumberland on February 17, 2017.

process does not necessarily require a prior hearing in every instance." *AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 86. A hearing held after suspension is adequate so long as it is held within a reasonable amount of time, given the issues and interests at stake. *Id.* The reasonableness of the delay is evaluated by reference to the private interest and harm occasioned by the delay, the government's interest and reason for the delay, and the likelihood that the pre-hearing decision is erroneous. *In re A-River City Bail Bond, Inc.*, 2016 WL 7190909, at *8.

Under Tennessee Code Annotated section 40-11-125, the court may suspend a bondsman under the following circumstances:

> Any court withholding, withdrawing or suspending a bondsman or other surety under this section shall notify the bondsman in writing of the action taken, accompanied by a copy of the charges resulting in the court's action. If, within twenty (20) days after notice, the bail bondsman or surety files a written answer denying the charges or setting forth extenuating circumstances, the court shall call a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the charges and answer. The court shall give notice to the bail bondsman, or to the insurer represented by the bondsman, of the time and place of the hearing. The parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel. If, upon a hearing, the court determines that the bail bondsman is guilty as alleged in the charges, the court shall thereupon withhold, withdraw or suspend the bondsman from the approved list, or suspend the bondsman for a definite period of time to be fixed in the order of suspension.

T.C.A. § 40-11-125(b).

The appellant in *In re A-River City Bail Bond, Inc.* alleged that its due process rights had been violated when it was suspended by the trial court for willful failure to comply with a local rule requiring it to post bond with the court clerk. 2016 WL 7190909, at *2. It further alleged that a nearly two-month delay in setting a hearing was likewise a violation of both statute and due process. *Id.* at *3. This court concluded that the mere assertion that the hearing was delayed without an explanation of why the delay was unreasonable was not enough to establish a violation of due process. *Id.* at *9. Likewise, in *AAA Aaron's Action Agency Bail Bonds, Inc.*, the appellant filed the notice of appeal sixteen days after it had responded to the notice of its suspension and before a hearing. 993 S.W.2d at 87. This court held that the appeal was filed "prematurely" because the trial court had not yet had the chance to hold a hearing. *Id.* Noting that "'inherent in any bureaucracy, ... is a certain amount of inefficiency and delay, and the

mere allegation of delay without an explanation of why the delay is unreasonable does not support a claim for due process,'" the court concluded that the delay was not unreasonable. *Id.* (quoting *Slugocki v. United States,* 988 F. Supp. 1443, 1447 (S.D. Fla. 1997)).

Here, Cumberland was suspended on February 17, 2017. On February 22, 2017, it filed a motion to set aside the order, requesting a hearing. The hearing was held on March 17, 2017, twenty-three days after Cumberland's[3] request. Although the Appellants object to the fact that the suspension preceded the hearing, "[p]rocedural due process does not necessarily require a prior hearing." *In re A–River City Bail Bond, Inc.*, 2016 WL 7190909, at \*9. In fact, the statute clearly contemplates that the court may suspend a professional bondsman pending a hearing. *See* T.C.A. § 40-11-125(b) (providing that if a bondsman files an answer to a suspension order, the court "shall call a hearing within a reasonable time"); *see also* T.C.A. § 40-11-319(d) (providing for automatic suspension of a professional bondsman who fails to notify the court of a felony arrest, pending a hearing or resolution of the charges).

The Appellants, unlike the parties in *AAA Aaron's Action Agency Bail Bonds, Inc.* or *In re A–River City Bail Bond*, provided in the record an affidavit detailing an aggregate loss of approximately $10,000 per month for the suspension of all three entities. However, the record also reveals that the allegations of Mr. Pell raised doubts regarding widespread misconduct in the district. The court, in ordering the temporary suspension, found that the suspension was necessary to restore "public confidence in the judicial system." In light of our prior holding that a notice of appeal filed sixteen days after the response was premature, we cannot say that the delay of twenty-three days was unreasonable, given the interests at stake. *See AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 87. Accordingly, we conclude that the Appellants were not denied due process.

### B. De Novo Review of Suspension

The Appellants challenge the suspension of their bonding privileges. We review the trial court's suspension of a bonding company de novo. T.C.A. § 40-11-125(d). "Under this de novo standard, 'the parties are entitled to a reexamination of the whole matter of law and fact.'" *In re Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012) (quoting *State v. Cunningham,* 972 S.W.2d 16, 18 (Tenn. Crim. App. 1998)).

---

[3] The other Appellants were suspended on February 27, 2017, and moved to set aside the suspension on March 6, 2017, eleven days prior to the hearing.

### 1. A Bail Bonding and A+ Bail Bonding

Appellants A Bail Bonding and A+ Bail Bonding object to their suspension from writing bonds on the grounds that they have no legal connection to Mr. Pell, who was an authorized agent of Cumberland only. A Bail Bonding and A+ Bail Bonding assert that their only connection to the matter is that Mr. Baggenstoss is the owner of Cumberland, A Bail Bonding, and A+ Bail Bonding.

At the hearing, the Appellants introduced proof that they were separate legal entities under the laws of the State of Tennessee, and Mr. Baggenstoss testified that A Bail Bonding and A+ Bail Bonding had no connection to Mr. Pell, who was an agent only for Cumberland. Mr. Baggenstoss testified he was the sole owner of all three bonding companies.

The trial court in *In re AAAA Bonding Co.* suspended the authority of the bonding company to write bonds because the company's owner had been elected Circuit Court Clerk. 2016 WL 2621087, at *2-3. At a hearing, the proof established that the Circuit Court Clerk had transferred ownership of the company to her husband and that the two, despite their marriage, did not comingle their funds. *Id.* at *3. This court found that the trial court erred in suspending the company's bonding privileges when there was no evidence that the company under its new owner was disqualified. *Id.* at *5.

In this case, there was no evidence regarding any misconduct on the part of A Bail Bonding, A+ Bail Bonding, or any of their agents. Neither was there evidence of misconduct on the part of their owner, Mr. Baggenstoss. There was no legal basis to require A Bail Bonding or A+ Bail Bonding to report Mr. Pell's arrest. Accordingly, we conclude that the trial court erred in suspending A Bail Bonding and A+ Bail Bonding.

### 2. Cumberland

Cumberland argues that the suspension of its bonding privileges was error because it was ignorant of Mr. Pell's misdeeds, was not responsible for them, and took immediate action to revoke Mr. Pell's authority to make bonds. The State responds that Cumberland was properly suspended based on its agent's misconduct.

The trial court's initial decision to suspend Cumberland was based on Mr. Pell's arrest for misconduct, on Mr. Pell's statement that his misconduct was not unusual in the bonding industry, and on Cumberland's failure to notify the court of Mr. Pell's arrest. The trial court suspended the remaining Appellants to prevent "a back door approach." After the hearing, the trial court ordered the suspension to remain in place for six months, finding that although Mr. Baggenstoss had no knowledge of Mr. Pell's

misconduct, he had "invite[d] the problems" by failing to prohibit the misconduct in his employee manual. The court further "note[d]" that Cumberland had violated the local rules by failing to notify the court of its agent's arrest. The trial court ordered the Appellants to include rules prohibiting sexual contact with clients in their employee manuals.

Under the following circumstances, the trial court has the authority to suspend a professional bondsman or other surety:

> [A]pproval of a professional bondsman or other surety may be withheld, withdrawn or suspended by any court if, after investigation, it appears that a bondsman:
>
> (1) Has been guilty of violating any of the laws of this state relating to bail bonds;
>
> (2) Has a final judgment of forfeiture entered against the bondsman which remains unsatisfied;
>
> (3) Is guilty of professional misconduct as described in § 40-11-126; or
>
> (4) If applying for approval as a professional bondsman, has been convicted in any state of the United States of two (2) or more misdemeanors which are equivalent to Tennessee Class A or Class B misdemeanors; provided, however, that the misdemeanor convictions shall have occurred within five (5) years of the date the application for approval is filed.

T.C.A. § 40-11-125(a). Accordingly, the statute permits suspension for professional misconduct. T.C.A. § 40-11-125(a)(3). Included in the statutory definition of unprofessional conduct is the acceptance of "anything of value from a principal except the premium; provided, that the bondsman shall be permitted to accept collateral security or other indemnity from the principal which shall be returned upon final termination of liability on the bond." T.C.A. § 40-11-126(8). Both of the trial court's orders of suspension referenced this statutory provision.[4]

---

[4] We note parenthetically that Tennessee Code Annotated section 40-11-319 mandates that "[a] professional bondsman who is arrested in this state for a felony, or is arrested in another state or by the federal government for the equivalent of a felony in this state, shall notify, in writing, within seventy-two (72) hours of the arrest, the court or courts in which the professional bondsman is qualified." T.C.A. § 40-11-319(a). Failure to comply results in automatic suspension pending a hearing. T.C.A. § 40-11-319(d). The State, while citing this statutory provision, does not argue that Cumberland, rather than Mr.

A professional bondsman is statutorily defined as:

any person, firm, partnership or corporation, engaged for profit in the business of furnishing bail, making bonds or entering into undertakings, as surety, in criminal proceedings, or for the appearance of persons charged with any criminal offense or violation of law or ordinance punishable by fine, imprisonment or death, before any of the courts of this state, including municipal courts or securing the payment of fines, judgments or damages imposed and of costs assessed by those courts upon preliminary or final disposition thereof.

T.C.A. § 40-11-301(4)(A). Furthermore, professional bondsman includes the agents or employees of a professional bondsman "whether with or without compensation or salary." T.C.A. § 40-11-301(4)(B). Accordingly, it appears that both Cumberland and Mr. Pell qualify as "professional bondsmen" under the statute.

There is no dispute that Mr. Pell engaged in professional misconduct meriting the most severe of sanctions. The trial court found that Mr. Pell's conduct was shocking to the conscience and was a predatory act requiring draconian sanctions to deter any future misconduct. We agree with the trial court that Mr. Pell's misconduct is shocking to the conscience and deserves extreme sanction. Cumberland, however, disclaims responsibility for Mr. Pell's misdeeds and argues that neither its hiring practices nor its response to the misconduct can be faulted.

We note, in our de novo review, that the trial court found that "there was no proof that Mr. Baggenstoss had prior knowledge" of the offensive conduct. In our reexamination of the law and facts of the case, we find that the regrettable misconduct in this case was attributable solely to the actions of one rogue agent who was acting without the knowledge, support, or encouragement of Cumberland.

Likewise, a glaring omission in the proof at the hearing was any evidence that the misconduct was widespread. There was simply nothing introduced which could support a conclusion that any bondsman other than Mr. Pell was engaging in misconduct. To the contrary, Cumberland was prepared to present proof, to which the State stipulated, that none of its other agents engaged in misconduct or were aware of any misconduct on the part of Mr. Pell. Mr. Pell's statement to Investigator Blansett that trading sex for bonds

Pell, had a statutory duty to notify the court of the arrest or suffer automatic suspension. Neither did the trial court base its suspension on this provision.

- 13 -

was a "common occurrence" was a schoolboy tactic intended to minimize his own culpability by fabricating allegations of misconduct in others.

The trial court hinged the sanctions on its determination that Cumberland's failure to prohibit sexual contact with clients in an employee manual "invites the problems discovered in this case." We find that Cumberland's hiring practices were irreproachable, meeting or exceeding statutory requirements. The proof at the hearing demonstrates that Cumberland completed a thorough background check on Mr. Pell and discovered no indication that he had a propensity to unethical conduct. *See* T.C.A. § 40-11-317(a) (requiring criminal background check conducted by the Tennessee Bureau of Investigation). Mr. Pell had previously worked in law enforcement and had an unblemished record, and his letters of recommendation came from others employed in law enforcement. Cumberland provided a continuing education seminar to its employees where they were told that sexual contact with clients was unethical. Cumberland received no notice of the 2015 allegations of misconduct which were investigated in Jasper. Its first notice that something was amiss came not from law enforcement but from the press, after Mr. Pell's arrest had revealed his criminal conduct to the world. Cumberland moved immediately to remove Mr. Pell as its bonding agent.

The trial court required the Appellants to revise their manuals and instituted the six-month suspension. There is nothing in the record to indicate that any other bonding companies in the district were required to include similar provisions in their employee manuals or had similar provisions in place. The trial court did not cite any legal authority to support its decision to require Cumberland to revise its employee manual, and we conclude that the trial court acted arbitrarily and capriciously in imposing the requirement only on the companies owned by Mr. Baggenstoss.

Furthermore, we conclude, on our de novo review, that the six-month suspension of Cumberland, based on an alleged flaw in its employee manual, was unwarranted. The trial court appears to have concluded, as we have, that Mr. Pell's actions were those of a rogue agent. Accordingly, the trial court based the suspension not on Mr. Pell's misconduct but on Cumberland's failure to include explicit prohibitions on sexual contact in the employee manual. Tennessee Code Annotated section 40-11-125(a), however, does not authorize suspension for flaws in an employee manual. The purpose of the suspension was to deter one rogue agent, but the effect was to punish Cumberland, whose actions appear to have been blameless.

We do not mean to suggest that a professional bondsman cannot be suspended based on the actions of its agent. We merely observe that the record before us refutes culpability on the part of Cumberland and that the trial court's basis for suspension was

not any statutory misconduct but an allegedly inadequate employee manual. We reiterate that suspension on this basis was error.

The State argues that Cumberland also failed to properly notify the court of the arrest of Mr. Pell under the local rules. In suspending Cumberland, the trial court observed:

> The bonding companies owned and operated by Mr. Baggenstoss in Marion County must be sanctioned so that there will be a deterrence against sexual misconduct and a disincentive to allow their agents to engage in conduct such as occurred in this case. The Court further notes it is not inconsequential that Cumberland Bail Bonding Company failed to notify the Court as required by Local Rule 25.14(H) of the arrest of Agent Pell.

Rule 25.14(H) of the Local Rules of the Twelfth Judicial Circuit mandates:

> It shall be the responsibility of any bonding company and/or bonding company owner to immediately notify the Court, in writing, of any misdemeanor and/or felony arrest of any of its agents, including an owner/agent. Failure to do so may result in any disciplinary action against the agent and/or company the Court, in its sole discretion, find[s] necessary.

Trial courts possess the inherent power to administer their affairs. *Memphis Bonding Co. v. Criminal Court of Tennessee 30th Dist.*, 490 S.W.3d 458, 463 (Tenn. Ct. App. 2015). "'A trial court has full authority to determine who should be allowed to make bonds in its court.'" *In re A Way Out Bonding*, No. M2012-00423-CCA-R3-CO, 2013 WL 2325276, at *2 (Tenn. Crim. App. May 28, 2013) (quoting *In Re: Tyrone A. Byrd v. State,* No. W2009-01257-CCA-R3-CD, 2010 WL 161500, at *1 (Tenn. Crim. App. Jan. 15, 2010)). A trial court's authority to regulate bondsmen through local rules is an exercise of "wide discretion," and such rules "will not be overturned absent a showing that they were arbitrary, capricious, or illegal." *Memphis Bonding Co.*, 490 S.W.3d at 463 (Tenn. Ct. App. 2015); *see In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998). Local rules are authorized under Tennessee Supreme Court Rule 18, and the Legislature's enactment of statutes addressing bonding does not remove the trial court's inherent powers of regulation. *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995). However, local rules may not be inconsistent with rules promulgated by a higher court. *See* T.C.A. § 16-3-407; Tenn. R. Sup. Ct. 18.

While we review the exercise of a trial court's authority to regulate bonding companies through local rules to determine if the trial court's actions were arbitrary, capricious, or illegal, *Memphis Bonding Co.*, 490 S.W.3d at 463, statute mandates that

this court review a trial court's action in suspending or revoking the authority of a bondsman under a de novo standard of review. T.C.A. § 40-11-125(d); *In re A-River City Bail Bond, Inc.*, 2016 WL 7190909, at \*4.

Mr. Baggenstoss testified at the hearing that the failure to include Mr. Pell's criminal conduct in the request to revoke his authority as a bondsman was inadvertent and the result of ignorance of the requirement. The trial court made no factual finding regarding the failure to follow the requirements of the local rule, but it is apparent from the record that Mr. Pell's arrest was neither news to the court nor a secret from the community. Indeed, the judge presiding over the hearing observed that the court became aware of the misconduct on February 10, 2017, when a story regarding Mr. Pell's arrest was published in the newspaper. Mr. Baggenstoss himself first learned of the crimes from the press. The trial court did not find that Mr. Baggenstoss was attempting to screen the misdeeds by failing to include the information in his petition to revoke Mr. Pell's authority as an agent. When Cumberland at length became aware of the misconduct, it took immediate action to remove Mr. Pell as an authorized agent in order to limit any further misdeeds. The petition to remove Mr. Pell was mailed one business day after the court clerk informed Cumberland of the requirements necessary to revoke Mr. Pell's authority. The *sua sponte* suspension order was filed three business days after Cumberland's filing and one week after the publication in the newspaper of Mr. Pell's bad acts.

In the order of suspension, the trial court found it "not inconsequential" that Cumberland failed to notify the court of the arrest. The finding regarding the failure to notify came after the trial court's order had already concluded that the Appellants would be suspended as a deterrent to misconduct. We conclude from this language that the failure to notify was not in itself a basis for the suspension. While the trial court "note[d]" that the failure to notify was "not inconsequential," the court does not appear to have based the six-month suspension on this technical violation. Accordingly, we conclude that the failure to notify likewise forms no basis for affirming the suspension.

## CONCLUSION

Having concluded on our de novo review that the trial court erred in imposing the suspension on the Appellants, we vacate the judgment suspending the Appellants.

_____
JOHN EVERETT WILLIAMS, JUDGE