IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 14, 2025 Session

## WILLIAM JOSEPH ROBINETTE, ET AL. v. TINA ROBINETTE, ET AL.

**Appeal from the Chancery Court for Sullivan County**
**No. 21-CK-43021          William K. Rogers, Judge**
_____

### No. E2024-00301-COA-R3-CV
_____

William Joseph Robinette and his daughters, Delores Reynolds and Jody Stewart, (collectively, "Plaintiffs") filed suit in the Sullivan County Chancery Court ("the Trial Court"), seeking a declaration of their rights as the lawful owners of Fuller Enterprises, LLC against the right of ownership by Tina Robinette ("Widow"), the widow of Mr. Robinette's son and Ms. Reynolds and Ms. Stewart's brother, Will Robinette ("Decedent"). Plaintiffs later added Decedent's estate and Fuller Asphalt Material, LLC, as additional defendants (collectively with Widow, "Defendants"). Widow filed abusive civil action ("ACA") motions against Plaintiffs, which the Trial Court granted. Plaintiffs appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and W. NEAL MCBRAYER, JJ., joined.

Michael G. Floyd, Memphis, Tennessee, for the appellants, Jody Virginia Lynn Stewart, Delores Lee Robinette Reynolds, and William Joseph Robinette.[1]

Richard E. Ladd, Jr. and Mark E. Frye, Bristol, Tennessee, for the appellees, Tina Robinette, Fuller Asphalt Material, LLC, and Estate of William Joseph Robinette, Jr.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and Lily-Ana Fairweather, Assistant Attorney General for the appellee, the State of Tennessee.

---

[1] Plaintiffs also name Fuller Enterprises, LLC as an appellant. However, the Trial Court determined that Fuller Enterprises was a nominal party best represented by counsel for the receiver, rendering Arthur M. Fowler, III, counsel of record for Fuller Enterprises. We conclude that Fuller Enterprises is not a party to this appeal and is not represented by Plaintiffs' counsel.

## OPINION

## Background

In July 2021, Plaintiffs filed a complaint against Widow in the Trial Court alleging that Fuller Enterprises had been formed as a sole proprietorship in 1987 and then transitioned into an LLC in 2009. According to Plaintiffs, Mr. Robinette and his wife owned a 25% membership interest, Ms. Reynolds owned a 25% membership interest, Ms. Stewart owned a 25% membership interest, and Decedent owned a 25% membership interest. Mr. Robinette's wife died in 2019, and her membership lapsed and went to Mr. Robinette. On June 21, 2021, Decedent died, and his membership interest lapsed and was evenly distributed among Plaintiffs, leaving each with a one-third membership interest.

According to Plaintiffs, Widow began to take steps to take ownership and control of Fuller Enterprises on or about June 21, 2021, by changing the locks, changing the passwords to accounts and computer hardware and software, making staffing changes, engaging in banking business without the knowledge and consent of the other members, and otherwise taking steps inconsistent with Plaintiffs' ownership. Widow obtained a new federal tax-identification number without Plaintiffs' knowledge or consent, and she opened some known and unknown bank accounts. Widow further excluded Plaintiffs from the operations or access to Fuller Enterprises and its properties, and she wrongfully obtained a life insurance policy on Decedent that had been paid for by Plaintiffs. Since her husband's death, Widow has wrongfully claimed that she was the owner and operator of Fuller Enterprises.

Plaintiffs requested that the Trial Court make a judicial declaration of their rights as sole owners of Fuller Enterprises and declare that Widow had no legal rights to Fuller Enterprises merely by virtue of her marriage to Decedent. They also asked the Trial Court to find Widow liable to Plaintiffs, that they be awarded compensatory damages, that they be awarded treble damages, that Widow be enjoined from interfering with Fuller Enterprises' business, that Widow be ordered to turn over all tangible and intangible property, and that Plaintiffs be awarded their attorney's fees, expenses, and costs.

Plaintiffs contemporaneously filed a motion for an *ex parte* temporary injunction, requiring Widow to, *inter alia*, "return any and all funds, property, or possession of anything that is or could be seen as owned by Plaintiff LLC as well as restraining any and all involvement of and by her with the Plaintiffs and their work." The Trial Court granted the motion for a temporary injunction.

Widow filed a response to the motion for a temporary injunction and an answer to the complaint, denying that Plaintiffs owned an interest in the following entities: Fuller Paving Company, Fuller Asphalt Materials, Fuller Paving Enterprises, LLC, or Fuller Enterprises, LLC. She further alleged that Fuller Paving Company and Fuller Asphalt

- 2 -

Materials were sole proprietorships owned by Decedent and that Fuller Enterprises had been administratively dissolved eight years prior.

Plaintiffs filed an emergency motion for the appointment of a receiver. In her response to Plaintiffs' motion for a receiver, Widow included the affidavit of Aaron Crockett, a bookkeeper and accountant. According to Mr. Crockett, Crockett's Tax Service prepared or prepares the tax returns for Mr. Robinette, Ms. Reynolds, Ms. Stewart, "Fuller Enterprises, LLC, d/b/a Fuller Paving Company, Fuller Asphalt Materials, LLC, Fuller Paving, and Fuller Paving Maintenance." Mr. Crockett further explained that Fuller Paving was a sole proprietorship until January 15, 2020, and that Fuller Enterprises, LLC was administratively dissolved on June 3, 2010. Decedent had asked Mr. Crockett to reinvigorate Fuller Enterprises as a sole member limited liability company, which Mr. Crockett did.

On July 23, 2021, Presiding Judge John S. McLellan, III, entered an order to transfer, citing Chancellor Moody's recusal. The case was transferred to Judge William K. Rogers.

Widow filed a motion to dissolve the temporary injunction, arguing that she was not afforded an opportunity to be heard before the injunction was issued. In September 2021, the Trial Court entered an order voiding and dissolving the *ex parte* temporary injunction. The Trial Court determined that the injunction should not have been granted given the lack of notice to Widow, failure to file bond, and the absence of findings of facts and conclusions of law required by Tennessee Rule of Civil Procedure 65.

The Trial Court appointed Richard F. Ray, CPA, as the receiver of Fuller Enterprises, LLC, d/b/a Fuller Paving Company in September 2021. On November 1, 2021, Mr. Ray filed a motion to hold Ms. Stewart in contempt of court. Mr. Ray argued that the Trial Court granted him full power and authority to recoup all payments and funds owed to, currently held by or on behalf of, or improperly distributed or paid by Fuller Paving for Fuller Paving. Mr. Ray asserted that Ms. Stewart took possession of two checks totaling $201, 485.50 made payable to Fuller Paving and deposited them into her personal bank account. Mr. Ray stated that he had demanded a return of the monies, that Ms. Stewart had promised to pay the monies, and that Ms. Stewart had failed to follow through.

The Trial Court granted the motion, finding that "Stewart took control of two checks made payable to Fuller Paving totaling $201,485.50 and deposited these checks into an unidentified account under her control and she has failed to turn these funds over to the Receiver as required by the (Amended) Order Appointing Receiver." The Trial Court found Ms. Stewart in civil contempt, reserved punishment for her civil contempt, and ordered her to pay back the missing money.

In April 2022, Plaintiffs filed an amended complaint, bringing claims of conspiracy by misrepresentation, fraud, and intentional concealment; breach of contract; equitable estoppel, concealment of cause of action, equitable reformation of deed, and fraudulent conveyance; breach of various fiduciary duties; tortious interference with contract conversion and detention of company customers, business, and assets by conspiracy to misrepresent and defraud; conversion of company funds for life insurance premiums and other personal expenses by misrepresentation and fraud; and accounting and declaratory judgment of ownership of Fuller Enterprises, LLC, d/b/a Fuller Paving. They requested punitive damages and that Widow be enjoined from interfering with the business. Plaintiffs also filed a motion to add Decedent's estate and Fuller Asphalt Materials, LLC as defendants. The Trial Court granted Plaintiffs' motion to add these parties as defendants.

In August 2022, Widow filed a motion to compel Plaintiffs to produce tax documents. She explained that Plaintiffs alleged that they had been paid significant distributions since 2009 from Fuller Enterprises and that she had served Plaintiffs with requests for inspection, scanning, copying, and production of documents and things in order for her to develop her claims and defenses. Widow claimed that Plaintiffs had refused to produce any responsive documents or information. She also filed a motion for miscellaneous relief, asking the Trial Court to "stay this case as to any proceedings, motions, petitions and/or hearings initiated or filed by the Individual Plaintiffs until each of the Individual Plaintiffs produce" the tax documentation.

In February 2023, the Trial Court granted Widow's motion to compel and motion for miscellaneous relief and ordered that "any discovery, proceedings, motions, petitions and/or hearings initiated, served or filed by Plaintiff Fuller Enterprises, LLC, or by the Individual Plaintiffs, or any of them, is STAYED pending further order of the Court for good cause shown."

In December 2022, Widow filed motions alleging that Plaintiffs were abusive civil action plaintiffs, pursuant to Tenn. Code Ann. §§ 29-41-101 to -107. Widow alleged:

> Since the death of her husband, William J. Robinette, Jr. ("Will Robinette"), on June 21, 2021, Mrs. Robinette's constant companion has been torment. Based on the meritless and malicious actions of Plaintiff Delores Lee Robinette Reynolds ("Ms. Reynolds"), in concert with, and in addition to, Plaintiffs William Joseph Robinette ("Joe Robinette) and Jody Virginia Lynn Stewart ("Ms. Stewart"), (collectively, Ms. Reynolds, Joe Robinette and Ms. Stewart as the "Abusive Civil Action Plaintiffs"), Mrs. Robinette has been deprived of her ability to grieve the untimely death of her husband. Instead, starting mere days after Will Robinette's death, Mrs. Robinette has been forced to defend herself against accusations that are

- 4 -

based on fraud and forged documents in not just one lawsuit, but four separate actions initiated, or caused, by the Abusive Civil Action Plaintiffs.

The Abusive Civil Action Plaintiffs have engaged in their ongoing and deliberate malicious attacks against Mrs. Robinette based on an irrational and erroneous belief that Mrs. Robinette somehow contributed to the death of Will Robinette, who passed away from complications associated with COVID-19.

(Footnote omitted.)

Widow presented several allegations in her ACA motions, including that Mr. Robinette had turned over Fuller Paving as sole proprietorship to Decedent in 2005; Mr. Robinette stopped paying any taxes on income received by Fuller Paving; Decedent and Widow reported Fuller Paving as a sole proprietorship through their joint tax filings and paid all related taxes; it was well known that Mr. Robinette was retired and had turned over Fuller Paving to Decedent; Mr. Robinette referred to Fuller Paving as his son's business; Decedent instructed Mr. Crockett to set up a new LLC with the name Fuller Enterprises in 2020; the Tennessee Secretary of State rejected the proposed name because it was already being used by an existing, albeit dissolved, company; Decedent, as a result, reinstated Fuller Enterprises as a single member LLC; annual reports identified Decedent as the sole member; Decedent contracted COVID-19 in May 2021 and was hospitalized at a hospital in Atlanta; Ms. Stewart tried to "seize control" of Decedent's medical treatment based on a power of attorney; the hospital rejected her proffered power of attorney because it lacked a medical directive; Ms. Stewart wanted Decedent's doctors to allow a third-party health care provider to inject Decedent with an experimental COVID medication from Israel; Decedent's doctors rejected its use; and as a result, Plaintiffs believe Widow "killed" Decedent and have made these beliefs public.

An evidentiary hearing was held in October 2023. On the first day of the hearing, Plaintiffs' counsel expressed for the first time his "opinion" that the ACA statutes were unconstitutional and requested additional time to join the State of Tennessee and serve notice upon the Attorney General. The Trial Court determined that this was an untimely request as this was the first time Plaintiffs indicated they would challenge the ACA statutes' constitutionality. Plaintiffs' counsel also asked the Trial Court to consider transferring the matter to the Circuit Court for Sullivan County ("the Circuit Court") because the amended complaint contained a claim for unliquidated damages. The Trial Court denied this request. Plaintiffs' counsel then asked the Trial Court to review the ACA motions without hearing any evidence, which the Trial Court also denied.

The Trial Court granted Widow's ACA motions in an order entered on November 30, 2023. The Trial Court found that the ACA statutes applied to this case, finding that it was undisputed that Widow and Plaintiffs were adults who were related or were formerly

related by marriage, in accordance with Tenn. Code Ann. § 29-41-101(5)(E). The Trial Court found that Plaintiffs had filed their complaint against Widow without probable cause and with improper malicious intent and/or was primarily designed to exhaust her financial resources; force her to alter, engage in, or refrain from engaging in lawful conduct and conduct that Widow had the right to engage in; impair her health and well-being; adversely impact her ability to pursue and maintain a livelihood; and impair her reputation.

The Trial Court further found that Plaintiffs initiated this action against Widow primarily to harass, annoy, and maliciously injure Widow and that their claims, allegations, and legal contentions were not warranted by existing law or a reasonable argument for the modification or reversal of existing law or establishment of new law. The Trial Court also found that their factual contentions were without evidentiary support, specifically noting that Plaintiffs relied on improperly acquired, false, fraudulent, altered, and/or forged documents. The Trial Court determined that Plaintiffs, particularly Ms. Stewart, had attempted to steal and/or fraudulently acquire Fuller Enterprises from the Decedent's legal heirs, Widow and the son of Widow and Decedent. The Trial Court found that the evidence "overwhelmingly and independently" established by a preponderance of the evidence that the action was an abusive civil action and that Plaintiffs were ACA plaintiffs.

The Trial Court additionally determined that Fuller Enterprises was a nominal party best represented by counsel for the receiver, rendering Arthur M. Fowler, III, counsel of record for Fuller Enterprises. The Trial Court found that Fuller Enterprises was a single member LLC with Decedent being the sole member and owner and that Decedent's ownership passed through his estate to his sole beneficiaries, Widow and their son. The Trial Court dismissed Plaintiffs' case with prejudice.

The Trial Court also considered Widow's previously filed sworn petition for attorney's fees, and granted it. The Trial Court awarded Widow $510,429.89 in reasonable attorney's fees and costs. The Trial Court prohibited Plaintiffs from instituting any civil actions against Widow for a period of 48 months as well as continuing any civil action or claim against Widow that was instituted before the date of its final order.

On December 6, 2023, Plaintiffs filed a motion to alter or amend, arguing, *inter alia*, that the ACA statutory scheme was unconstitutional and that the Trial Court had no subject matter jurisdiction to hear the matter due to the relief sought in the Plaintiffs' amended complaint. Plaintiffs asked the Trial Court to vacate its order and transfer the case to the Circuit Court.

Widow filed a response, motion for supplemental attorney's fees incurred in defending the motion to alter or amend, and a second sworn petition for attorney's fees.

Plaintiffs filed a motion to transfer the case to the Circuit Court due to the Trial Court's lack of subject matter jurisdiction. In orders entered on February 1, 2024, the Trial Court denied Plaintiffs' motion to transfer and motion to alter or amend. The Trial Court granted Widow's motion for supplemental attorney's fees in the amount of $45,117.93. Plaintiffs timely appealed.

## Discussion

Although not stated exactly as such, Plaintiffs raise numerous issues, which we have consolidated and reordered as follows: (1) whether the Trial Court erred by failing to transfer the case to the Circuit Court for lack of subject matter jurisdiction; (2) whether the ACA statutes violate the United States and Tennessee Constitutions; (3) whether the Trial Court erred in construing and applying the ACA statutes to this case; (4) whether the Trial Court erred by awarding Widow attorney's fees without a hearing to determine their reasonableness; (5) whether the Trial Court erred in awarding Widow supplemental attorney's fees; (6) whether the Trial Court erred in staying all of Plaintiffs' actions in granting Widow's motion to compel; and (7) whether the contempt order entered against Ms. Stewart is void based on lack of personal service.[2] Although not raised as designated issues, Defendants present additional issues, which we have restated slightly as follows: (8) whether this Court lacks subject matter jurisdiction to hear this appeal and (9) whether they are entitled to recover their reasonable attorney's fees and costs in this appeal, pursuant to Tenn. Code Ann. § 29-41-106, and alternatively, pursuant to Tenn. Code Ann. § 27-1-122.[3]

This Court has previously explained the standard of review for abusive civil action suits as follows:

---

[2] Plaintiffs have waived their argument against the propriety of the transfer of this case from Chancellor Moody to Judge Rogers because they failed to raise this as a designated issue in a statement of issues as required by Tenn. R. App. P. 27(a)(4). *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)."). They also do not cite to the record in making this argument. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

[3] Our Supreme Court has recently held:

> When a request for appellate attorney's fees does not seek relief from the judgment below, an appellee is not required to include the request in the statement of issues. Tenn. R. App. P. 27(b). But an appellee is required to present the request to the appellate court by raising it in the body of the brief, adequately developing the argument, and specifying that relief in the brief's conclusion.

*Charles v. McQueen*, 693 S.W.3d 262, 284 (Tenn. 2024).

Our review of that decision requires us to apply a statute to the facts, presenting a mixed question of law and fact, and is thus reviewed de novo, with no presumption of correctness accorded to the trial court's decision. *Lance v. York*, 359 S.W.3d 197, 201 (Tenn. Ct. App. 2011). In this type of review, appellate courts have " 'great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal.' " *Id.* (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

*Wilson v. Wilson*, No. M2021-01307-COA-R3-CV, 2022 WL 2963222, at *5 (Tenn. Ct. App. July 27, 2022). Our review of the Trial Court's subject matter jurisdiction is *de novo* "without affording the trial court's decision a presumption of correctness." *Memphis Bonding Co., Inc. v. Crim. Ct. Tenn. 30th Dist.*, 490 S.W.3d 458, 462 (Tenn. Ct. App. 2015).

We first address Defendants' argument that this Court lacks subject matter jurisdiction to hear this appeal. Defendants contend that Plaintiffs' motion to alter or amend was not proper under Tennessee Rule of Civil Procedure 59.04 given that Plaintiffs largely attempted to relitigate previously decided issues or attempted to raise new arguments. Therefore, Defendants argue that Plaintiffs' motion to alter or amend did not toll the 30-day period in which to file an appeal, rendering Plaintiffs' notice of appeal untimely.

This Court has previously elaborated on the purpose and effect of a Rule 59.04 motion as follows:

> "[A] motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, if timely filed, toll[s] commencement of the thirty-day period [for filing a notice of appeal] until an order granting or denying the motion is entered." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (citing Tenn. R. App. P. 4(b); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003)). However, we "must consider the substance of a motion in determining whether it is in fact one of the specified post-trial motions which toll commencement of the time." *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). At this point, the issue is not whether the trial court correctly *denied* the motion but instead whether the motion "was one recognized under Rule 59." *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012).

> "A motion to alter or amend should 'be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or

- 8 -

to prevent injustice.' " *U.S. Bank*, 410 S.W.3d at 826 n.2 (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Such a motion " 'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.' " *Id.* (quoting *In re M.L.D.*, 182 S.W.3d at 895). Additionally, a Rule 59.04 motion is not simply an opportunity "to re-litigate the issues previously adjudicated" by the trial court. *Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016).

*In re March 9, 2012 Order*, 637 S.W.3d 708, 712 (Tenn. Ct. App. 2020).

Although we agree that Plaintiffs attempted to raise new arguments and largely attempted to relitigate certain issues, we nevertheless conclude that Plaintiffs' motion was not so deficient such that it did not constitute a Rule 59.04 motion. Although their motion is certainly not an ideal model of a Rule 59.04 motion, Plaintiffs presented what they perceived as clear errors of law in the Trial Court's judgment. *See U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 827 (Tenn. Ct. App. 2012) ("Although the Bank takes issue with the fact that Tennessee Farmers challenged most of the trial court's rulings in its post-trial motion, we see no reason why this alone would remove it from the purview of Rule 59."); *In re Estate of Vaughn*, No. W2018-01600-COA-R3-CV, 2019 WL 3812419, at *6 n.5 (Tenn. Ct. App. Aug. 14, 2019) (concluding that "Rule 59.04 . . . allows trial courts an opportunity to revisit and reverse their own decisions" and "that the 'gravamen of Mr. DeSoto's motion is that the trial court erred in its legal analysis,'" which is "qualitatively similar to a motion under Rule 59"). We, therefore, determine that Plaintiffs' notice of appeal was timely and that this Court has subject matter jurisdiction to hear and adjudicate this appeal.

We next address Plaintiffs' argument that the Trial Court lacked subject matter jurisdiction. Plaintiffs contend that the Trial Court was deprived of subject matter jurisdiction by their claims for unliquidated damages in their amended complaint and that the Trial Court, accordingly, erred by denying their request to transfer this case to the Circuit Court. Upon reviewing the amended complaint and applicable law, we disagree.

With respect to subject matter jurisdiction, this Court has explained:

The concept of subject matter jurisdiction refers to a court's authority to adjudicate a particular case or controversy. Accordingly, it is viewed as a threshold inquiry.

The existence of subject matter jurisdiction " 'depends on the nature of the cause of action and the relief sought.' " A court has subject matter jurisdiction only when conferred by a statute or a provision of the state or federal constitution. When a court's subject matter jurisdiction is questioned, the first step is to ascertain the nature or gravamen of the case.

- 9 -

Then, the court must determine whether the constitution, the general assembly, or the common law have conferred on it the power to adjudicate cases of that sort.

*Memphis Bonding Co., Inc.*, 490 S.W.3d at 462 (internal citations omitted).

In determining whether a chancery court has subject matter jurisdiction over a matter, this Court has explained:

> Appellee is correct that "[i]t is sometimes broadly stated that when a chancery court has jurisdiction for one purpose, it will take jurisdiction for all purposes; but this means all purposes *incidental* to its jurisdiction of the main subject." *Vaughn v. Odom*, No. 43, 1988 WL 15711, at *2 (Tenn. Ct. App. Feb. 25, 1988) (emphasis added) (internal quotation marks omitted) (quoting *Tucker v. Simmons*, 287 S.W.2d 19, 21 (Tenn. 1956)). In the Tennessee cases stating "that Chancery takes jurisdiction of matters . . . when they are incidental to the main subject[, t]he inference clearly is . . . that if the main thing involved in the lawsuit is not of an equitable nature such as the equity court has given jurisdiction[,] then courts of equity will not take jurisdiction." *Tucker*, 287 S.W.2d at 20-21. In other words, the gravamen of the lawsuit must afford the chancery court subject matter jurisdiction—only then can the chancery court take jurisdiction for all other incidental purposes. *See id.* (internal citation omitted) ("Obviously the reason for this lawsuit and the gravamen of the lawsuit . . . was for the purpose of securing unliquidated damages for the injury that this woman received. This being true the Chancellor exercising his discretion and dismissed the suit because the main subject was a law cause and the equitable right was merely incidental[.]"); *see also Carter v. Slatery*, No. M2015-00554-COA-R3-CV, 2016 WL 1268110, at *3 (Tenn. Ct. App. Feb. 19, 2016) ("When a court's subject matter jurisdiction is questioned, the first step is to ascertain the nature or gravamen of the case.")[.]

*Lowery v. Redmond*, No. W2021-00611-COA-R3-CV, 2022 WL 1618218, at *4 (Tenn. Ct. App. May 23, 2022).

In their amended complaint, Plaintiffs asserted that the Trial Court had jurisdiction over their case pursuant to Tenn. Code Ann. § 29-14-103, which provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the

- 10 -

instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Plaintiffs raised several claims, which included: conspiracy by misrepresentation, fraud, and intentional concealment; breach of contract; equitable estoppel, concealment of cause of action, equitable reformation of deed, and fraudulent conveyance; breach of various fiduciary duties; tortious interference with contract conversion and detention of company customers, business, and assets by conspiracy to misrepresent and defraud; conversion of company funds for life insurance premiums and other personal expenses by misrepresentation and fraud; and accounting and declaratory judgment of ownership of Fuller Enterprises, LLC, d/b/a Full Paving.

In their prayer for relief, Plaintiffs requested that the Trial Court order Widow to account for all monies and proceeds received by or from any of the entity parties or on behalf of Fuller Paving; make a determination as to the respective contractual rights of the parties; enjoin Widow from interfering with the business; and award Plaintiffs compensatory damages, punitive damages, attorney's fees, and costs.

On the first day of the ACA hearing, Plaintiffs requested that the Trial Court transfer the case to the Circuit Court. The Trial Court denied this request, finding that Plaintiffs' claims for a declaratory judgment and injunction vested it with subject matter jurisdiction and that their claims for unliquidated damages were incidental to and dependent upon their claims for declaratory and equitable relief. Plaintiffs argue that the majority of their claims "sound in tort, and any claims that may be equitable in nature are merely incident to Appellant's numerous other claims." We, like the Trial Court, find the opposite is true in this case.

The gravamen or core issue of this case is the ownership of Fuller Enterprises, and Plaintiffs admit as much in their appellate brief. Plaintiffs state: "This case involves a dispute over the ownership of a family paving business[.]" Furthermore, Plaintiffs sought equitable remedies as a result of their claimed ownership, including a declaration of rights, an accounting, reformation, and an injunction. *See Ferguson v. Moore*, 348 S.W.2d 496, 498 (Tenn. 1961) ("Among the well established heads of this inherent equity jurisdiction are suits involving 'trusts,' or for an 'accounting,' or for a 'discovery' or 'injunction.' . . . As this suit involves a trust and seeks an accounting, discovery and injunction, it is within this inherent jurisdiction of the Chancery Court."); *Richi v. Chattanooga Brewing Co.*, 58 S.W. 646, 646 (Tenn. 1900) ("[A] court of equity, having taken jurisdiction of the cause for the purpose of injunction, or to restrain and abate the nuisance, may decide the whole controversy; its jurisdiction to award damages being incidental to its jurisdiction of the main subject."); *Greene Cnty. Union Bank v. Miller*, 75 S.W.2d 49, 52 (Tenn. Ct. App. 1934) ("The court of chancery has inherent jurisdiction in equity over a suit for accounting, a suit involving claims and counterclaims, where the accounts are too complicated to be dealt with in a court of law."); *Nashville Union*

*Stockyards, Inc. v. Grissim*, 13 Tenn. App. 115, 123 (1930) ("In such cases the court of equity, having obtained jurisdiction of the cause for the purpose of an injunction, may decide the whole controversy and render a final decree, even though all the issues are legal in their nature, capable of being tried by a court of law, and the legal remedies therefor are adequate.") (quoting 1 Pomeroy's Equity Jurisprudence (3 Ed.), sec. 236). We find that the gravamen of the lawsuit afforded the Trial Court with subject matter jurisdiction and that the remaining claims for unliquidated damages were incidental to the equitable claims.

Plaintiffs also present a myriad of reasons why the ACA statutes violate the United States and Tennessee Constitutions, including arguments that they violate due process, equal protection, and the separation of powers. However, we emphasize that this Court reviews findings of fact and conclusions of law made by trial courts, and here, the Trial Court made no findings of fact or conclusions of law addressing these arguments because Plaintiffs did not meaningfully present them. Our Supreme Court has previously provided guidance for how appellate courts should address constitutional arguments that are raised as an "afterthought" to a trial court, explaining:

> A conclusory contention that a statute is unconstitutional, raised for the first time in closing argument and only after the court indicates the merits do not weigh in that litigant's favor, does not present an attractive issue for appellate review. This Court "is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) (emphasis added). We find, on this record, that the challenge to the constitutionality of § 36-1-113(g)(6) and § 36-1-113(c)(2) was neither "presented" nor "decided."
>
> * * *
>
> We are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all. *See Mallicoat v. Poynter,* 722 S.W.2d 681, 682 (Tenn. Ct. App. 1986) ("The jurisdiction of this court is appellate only and we consider those issues which are *timely* brought to the attention of the trial court." (emphasis added)). As this issue of the constitutionality of § 36-1-113(g)(6) was not properly raised in the trial court, it has effectively been waived for full consideration on appeal.
>
> > It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the

- 12 -

> validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion.
>
> *Lawrence v. Stanford,* 655 S.W.2d [927,] at 929 [(Tenn. 1983)].

*In re Adoption of E.N.R.*, 42 S.W.3d 26, 31-33 (Tenn. 2001).

Plaintiffs waited some ten months after Widow filed the ACA motions and until the ACA hearing to inform the Trial Court that they wished to stay the proceedings in order to serve notice upon the Attorney General with their intent to contest the constitutionality of the ACA statutes. The Trial Court denied their request for a stay as untimely, and Plaintiffs' counsel merely stated his belief that the ACA statutes were unconstitutional without explanation or any real argument. We, accordingly, find that Plaintiffs have waived any objection to the constitutionality of the ACA statutes by failing to timely present their arguments to the Trial Court.

We next address the several issues Plaintiffs have raised challenging the Trial Court's interpretation and application of the ACA statutes. Plaintiffs first argue that the Trial Court erred by finding that Plaintiffs and Widow were in a civil action party relationship as defined under Tenn. Code Ann. § 29-41-101(5). According to Plaintiffs, the legislature's intent was to "protect those in a previous romantic relationship" and that by applying the statute to Plaintiffs and Widow, the Trial Court extended the reach of the ACA statutes "well beyond the legislature's original intent." Based upon the plain and unambiguous language of Tenn. Code Ann. § 29-41-101(5), we disagree.

Despite Plaintiffs' appeal to statements made by certain legislators, we begin our analysis with the words of the statute. *See In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) ("Our search for a statute's purpose begins with the words of the statute itself."). Furthermore, "[w]hen a statute is clear, we apply the plain meaning without complicating the task" and "[o]ur obligation is simply to enforce the written language." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009).

In addition, our Supreme Court has instructed

> When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources. *Overstreet v. TRW Commercial Steering Div.,* 256 S.W.3d 626, 630 (Tenn. 2008). Statutes relating to the same subject or having a common purpose should be construed together.

*Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

The relevant statute, Tenn. Code Ann. § 29-41-101(5), provides:

"Civil action party relationship" means the plaintiff commencing a civil action and the civil action defendant fall within one (1) of the following categories:

(A) Adults who are current or former spouses;

(B) Adults who live together or who have lived together;

(C) Adults who are dating or who have dated or who have or had a sexual relationship. As used in this subdivision (5)(C), "dating" and "dated" do not include fraternization between two (2) individuals in a business or social context;

(D) Adults related by blood or adoption;

(E) <u>Adults who are related or were formerly related by marriage</u>; or

(F) Adult children of a person in a relationship that is described in subdivisions (5)(A)-(E)[.]

(Emphasis added.)

The clear and unambiguous language of the statute provides that a civil action party relationship exists if the plaintiff and defendant fall within one of the enumerated categories. There is no indication from the language of the statute that the legislature's intent was to restrict the definition of a civil party action relationship to plaintiffs and defendants who have been romantically involved. Rather, the statutory language states otherwise. As previously noted, Plaintiffs rely upon statements made by legislators; however, we need not review the legislative history when the language of a statute is unambiguous, as it is here.

The statutory language clearly provides that a civil action party relationship may consist of adults who are related or were formerly related by marriage. In other words, a civil action party relationship may include a plaintiff and a defendant who are in-laws. Moreover, the language "related or . . . formerly related by marriage" clearly does not mean current or former spouses given that type of relationship is already provided for by subsection (A). It is undisputed that Plaintiffs are Widow's current or former father-in-law and sisters-in-law. We, accordingly, reject Plaintiffs' argument and agree with the Trial Court that Widow and Plaintiffs "are or were formerly related by marriage" and

- 14 -

were in a civil action party relationship under the clear and unambiguous language of the statute. Plaintiffs have presented the same contention as the basis for their argument that the Trial Court lacked subject matter jurisdiction. We reject this argument as well.

We next address Plaintiffs' argument that Widow failed to created a rebuttable presumption of an abusive civil action pursuant to Tenn. Code Ann. § 29-41-105. Plaintiffs again rely on a misreading of the ACA statutory scheme. Tenn. Code Ann. § 29-41-105 provides four ways a defendant may create a rebuttable presumption that the action constitutes an abusive civil action and that the plaintiff is an ACA plaintiff. Widow admittedly did not raise or create the rebuttable presumption under any of the four theories. Nevertheless, Widow did not need to raise, create, or rely on the rebuttable presumption to present a successful ACA claim.

Tenn. Code Ann. § 29-41-105 provides methods for an ACA defendant to create a rebuttable presumption, but there is no dictate in the statutory scheme that an ACA defendant must create a rebuttable presumption in order to prevail on an ACA claim. In fact, this Court recently found that an ACA defendant had successfully proven her ACA claim "even without consideration of the presumption." *Justice v. Nelson*, No. E2023-00407-COA-R3-CV, 2024 WL 3172263, at *7 (Tenn. Ct. App. June 26, 2024). This Court in *Justice* explained and delineated the ordinary way for an ACA defendant to prove her case, without resort to the rebuttable presumption, as follows:

> Tenn. Code Ann. § 29-41-101(1) provides the following elements to prove an ACA claim:
>
> > (1) "Abusive civil action" means a civil action filed by a plaintiff against a defendant with whom the plaintiff shares a civil action party relationship primarily to harass or maliciously injure the defendant and at least one (1) of the following factors are applicable:
> > (A) Claims, allegations, and other legal contentions made in the civil action are not warranted by existing law or by a reasonable argument for the extension, modification, or reversal of existing law, or the establishment of new law;
> > (B) Allegations and other factual contentions made in the civil action are without the existence of evidentiary support; or
> > (C) Issue or issues that are the basis of the civil action have previously been filed in one (1) or more other courts or jurisdictions by the same, and the actions have been litigated and disposed of unfavorably to the plaintiff[.]

> Put differently, a defendant must prove that (1) she shares a civil action party relationship with the plaintiff; (2) the plaintiff has filed a civil action primarily to harass or maliciously injure her; and (3) <u>either</u> (A) claims or allegations are not warranted by existing law or reasonable argument for modifying existing law or the establishment of new law; (B) allegations are without evidentiary support; or (C) the issue or issues have already been filed, litigated, and disposed of unfavorably to the plaintiff. The defendant must prove these elements by a preponderance of the evidence. *See* Tenn. Code Ann. § 29-41-106(a) ("If the court finds by a preponderance of the evidence that a person filing a civil action is an abusive civil action plaintiff, and that any or all civil actions filed by the abusive civil action plaintiff against the abusive civil action defendant that are pending before the court are abusive civil actions, the civil actions shall be dismissed.").

*Id.* at \*6. Based upon the language of the statute and this Court's analysis in *Justice*, we reject Plaintiffs' argument that Widow needed to create a rebuttable presumption in order to prevail on her ACA motions.

Plaintiffs have challenged the substance of the Trial Court's judgment in favor of Widow only on the grounds that the parties did not constitute a civil action party relationship and that Widow failed to create a rebuttable presumption. Plaintiffs do not otherwise challenge the Trial Court's findings or argue that Widow failed to prove any of the elements of an ACA claim. Having rejected the only two arguments presented for reversal, we affirm the Trial Court's judgment granting Widow's ACA motions.

We next address Plaintiffs' arguments related to the Trial Court's award of attorney's fees and costs to Widow. Plaintiffs argue that the Trial Court erred in its initial award of $510,429.89 in attorney's fees and costs to Widow because there was no evidentiary hearing on the matter.

We review the Trial Court's award of attorney's fees under the abuse of discretion standard. *See McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005) ("The award of attorney's fees and the determination of the reasonableness thereof are decisions largely within the discretion of the trial court. Deference is given to the trial court's exercise of discretion absent a clear abuse thereof."). Tenn. Code Ann. § 29-41-106(b)(2) provides that in the event a court finds that the plaintiff is an ACA plaintiff and that any or all civil actions filed by the plaintiff pending before the court are abusive civil actions, then the court *shall* award the defendant reasonable attorney's fees and costs of defending the action. With respect to the reasonableness of the attorney's fees requested, this Court has explained:

> A trial court may fix the fees of lawyers with or without expert testimony of lawyers and with or without a *prima facie* showing by plaintiffs of what a

- 16 -

reasonable fee would be. *Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). The trial judge may feel that the proceedings have sufficiently acquainted him or her with the appropriate factors to make a proper award of an attorney's fee without proof or opinions of other lawyers. *Kahn v. Kahn*, 756 S.W.2d 685, 696-97 (Tenn. 1988). Therefore, reversal of a fee award is not required merely because the record does not contain proof establishing the reasonableness of the fee. *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002). Should a dispute arise as to the reasonableness of the fee awarded, then in the absence of any proof on the issue of reasonableness, it is incumbent upon the party challenging the fee to pursue the correction of that error in the trial court by insisting upon a hearing on that issue, or to convince the appellate courts that he was denied the opportunity to do so through no fault of his own. *Id.* (citing *Wilson Mgmt. Co.*, 745 S.W.2d at 873); *Kahn*, 756 S.W.2d at 697. Absent a request for a hearing by the party dissatisfied by the award, a trial court is not required to entertain proof as to the reasonableness of the amount of attorney's fees awarded. *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *15 (Tenn. Ct. App. Feb. 17, 2005).

*Moran v. Willensky*, 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010).

At the conclusion of the ACA hearing, the parties scheduled a hearing for a date in November 2023 to finalize the final judgment and to address the amount of attorney's fees and costs to be awarded to Widow. Prior to the hearing, Widow filed a sworn petition for attorney's fees, costs, and expenses and a declaration from her counsel. Plaintiffs did not file an objection to the sworn petition nor make any objection at the hearing. Plaintiffs did not challenge the reasonableness of the requested amount whatsoever. We, accordingly, discern no error in the Trial Court's award of attorney's fees in accordance with Tenn. Code Ann. § 29-41-106(b)(2) or the reasonableness of the amount awarded.

With respect to the Trial Court's supplemental award of attorney's fees to Widow, Plaintiffs primarily argue that Widow presented no evidence to support her request for supplemental attorney's fees and that there is no statutory basis for supplemental attorney's fees for defending against a motion to alter or amend. As to Plaintiffs' first argument, we note that Widow filed a second sworn petition for attorney's fees, costs, and expenses and an amended second sworn petition prior to the hearing on several motions, including Plaintiffs' motion to alter or amend and motion to transfer and Widow's motion for additional attorney's fees and costs. Furthermore, Plaintiffs' counsel did not meaningfully challenge the reasonableness of the amount requested. Plaintiffs' counsel merely stated: "I don't think the amount of $45,000 is an appropriate fee, and I would ask the Court to glean through those bills before you sign that particular

- 17 -

order to determine whether the sum of $45,000 is an appropriate fee." We, therefore, find no merit to this argument.

Concerning their argument that there is no statutory basis for an award of supplemental attorney's fees, Plaintiffs argue that the Trial Court could have limited or prevented them from filing any motion after the ACA ruling but that the Trial Court chose not to impose that sanction against them. This is not true. The Trial Court's judgment granting Widow's ACA motions clearly includes a proscription on future filings by Plaintiffs. The Trial Court's judgment provided that Plaintiffs were prohibited from instituting any civil actions against Widow for 48 months and prohibited from "continuing any civil action or claim filed against [Widow] that was instituted against [Widow] before the date of the filing of this Order" pursuant to Tenn. Code Ann. § 29-41-107(a). (Emphasis added.) Section 29-41-107(a) provides that an ACA plaintiff is prohibited "from continuing a civil action that was instituted against the same civil action defendant prior to the date the person was determined to be an abusive civil action plaintiff."

In considering Plaintiffs' argument that there is no statutory basis for an award of attorney's fees at the conclusion of an ACA hearing, we note that this Court's previous decision to award attorney's fees and costs to an ACA defendant on appeal pursuant to Tenn. Code Ann. § 29-41-106 indicates that there is a statutory basis. *See Wilson*, 2022 WL 2963222, at *9. In considering whether an ACA defendant may be awarded attorney's fees and costs on appeal pursuant to the ACA statutes, this Court in *Wilson* concluded:

> We also construe the abusive civil action statute itself to provide a basis for an award of Ms. Wilson's attorney's fees in this appeal. Tennessee Code Annotated section 29-41-106 provides that when a trial court concludes that an action is an abusive civil action, the court shall dismiss the action and "[a]ward the civil action defendant reasonable attorney fees and all reasonable costs of defending the abusive civil action." Tenn. Code Ann. § 29-41-106(a), (b)(2). Although section 29-41-106 does not expressly provide for attorney's fees incurred on appeal, our Supreme Court has explained that "legislative provisions for an award of reasonable attorney's fees need not make a specific reference to *appellate* work to support such an award where the legislation has broad remedial aims." *Killingsworth v. Ted Russell Ford*, 205 S.W.3d 406, 409 (Tenn. 2006) (citing *Forbes v. Wilson Cty. Emergency Dist. 911 Bd.*, 966 S.W.2d 417 (Tenn. 1998)).

> Though the civil abuse action statutes do not include a statement of purpose or intent, we conclude that they have broad remedial aims because they are designed to give those suffering " 'a litigious form of domestic

- 18 -

assault' " a way to end the litigation and curb future filings by the abusive civil action plaintiff. Sheila Burke, *New State Law Seeks to Stop 'Stalking By Way of Courts,'* ASSOCIATED PRESS NEWS (June 25, 2018), https://apnews.com/article/0249e6d67b1d419b9787cb6adb297cb7 [https://perma.cc/T4 3A-GRJC]. We conclude that the Tennessee Abusive Civil Action statutes allow for an award of reasonable attorney's fees incurred on appeal when the court dismisses an action pursuant to a motion or petition filed under this chapter and that such fees are requested in an appellate pleading. Because we conclude that Mr. Wilson's action was properly dismissed against Ms. Wilson pursuant to Tenn. Code Ann. § 29-41-106, and because Ms. Wilson has requested her appellate fees in this case, she is entitled to her attorney's fees on this alternative basis as well.

*Id.* If an ACA defendant may be awarded attorney's fees and costs due to an ACA plaintiff's appeal under the ACA statutory scheme, we see no reason why a trial court should be unable to award attorney's fees and costs as a result of an ACA plaintiff's motion to alter or amend. In both scenarios, the plaintiff has continued the abusive civil action. We, therefore, find no merit in Plaintiffs' argument and no discernible error in the Trial Court's decision to award supplemental attorney's fees.

Plaintiffs also argue that the Trial Court abused its discretion by staying "any discovery, proceedings, motions, petitions and/or hearing initiated, served or filed by" Plaintiffs pending further order of the Court for good cause shown. The Trial Court entered this stay order when granting Widow's motion to compel Plaintiffs to provide certain tax documentation and motion for miscellaneous relief in February 2023. Plaintiffs neither explain how the Trial Court's stay of the proceedings constitutes reversible error nor demonstrate how it had any effect on the outcome of this case. We emphasize that the Trial Court's order did not prohibit Plaintiffs from filing responses to Widow's filings such as her ACA motions. The point of Plaintiffs' argument is largely unclear. We, accordingly, reject Plaintiffs' argument and conclude that even if the Trial Court did in fact somehow err by staying Plaintiffs' actions, any error was harmless.

We now address Plaintiffs' argument that the Trial Court's contempt order entered against Ms. Stewart is void for lack of personal service. Plaintiffs fail to cite to the record in their argument. Therefore, Plaintiffs have waived review of the issue by failing to comply with the briefing rules of this Court and the Tennessee Rules of Appellate Procedure. Tenn. Ct. App. R. 6(b) ("No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded."); Tenn. R. App. P. 27(a)(7)(A) (requiring that an appellant's argument contain "reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the

record"); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

Widow requests that she be awarded attorney's fees and costs on appeal pursuant to Tenn. Code Ann. § 29-41-106(b)(2), or alternatively, pursuant to Tenn. Code Ann. § 27-1-122. Given that the Trial Court properly granted Widow's ACA motions and dismissed Plaintiffs' case, we award Widow attorney's fees and costs incurred on appeal. *See Wilson*, 2022 WL 2963222, at *9 ("Because we conclude that Mr. Wilson's action was properly dismissed against Ms. Wilson pursuant to Tenn. Code Ann. § 29-41-106, and because Ms. Wilson has requested her appellate fees in this case, she is entitled to her attorney's fees on this alternative basis as well."). We remand to the Trial Court for it to determine the proper amount of reasonable attorney's fees and costs incurred by Widow on appeal.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's judgments granting Tina Robinette's ACA motions, dismissing Plaintiffs' action against Defendants, and awarding Ms. Robinette's attorney's fees and costs. Ms. Robinette's request for attorney's fees and costs on appeal is granted. We remand for further proceedings consistent with this Opinion, specifically for the determination of Ms. Robinette's reasonable attorney's fees and costs incurred on appeal, and collection of costs below. Costs of the appeal are assessed against the appellants, William Joseph Robinette, Jody Virginia Lynn Stewart, Delores Lee Robinette Reynolds, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE